W. D. TOWNSLEY, Executor, Plaintiff and Appellant, v. CHARLES F. TOWNSLEY, Defendant and Appellee.

**Estates of decedents:** REPORTS: SET-OFF: EVIDENCE. In this proceeding involving a set off of a legatee's interest under a will against a note executed by the legatee to the testator, evidence of the nonpayment of the note is held insufficient to overcome the presumption of payment arising from the execution of a release by the testator.

**Same:** EVIDENCE: TRANSACTIONS WITH A DECEDENT. A legatee under a will is incompetent to testify to a personal transaction with the testator; and the fact that a legatee did not offer to testify that a note given by him to the testator had been paid could not be considered as a circumstance tending to show that it was unpaid.

**Wills:** RECITAL OF CLAIMS: EVIDENCE OF LIABILITY. A will executed after the release of a note given by a legatee to the testator, in which the note was listed among others as due from the legatee, and the will required an application of the amount of the legacy to the notes unpaid at testator's death, but did not make the particular note a charge against the legacy, did not establish the legatee's liability for the note.

.Same:· REPORTS: APPEAL: TRIAL DE NOVO. Proceedings for the con-
4   firmation of an executor's report are not triable *de novo* on appeal,
    even though the executor asked that a release given by the testator
    for the payment of a note held by him be cancelled, because never
    delivered.

*Appeal from Washington District Court.*—HON. HENRY SIL-
WOLD, Judge.

THURSDAY, NOVEMBER 5, 1914.

THIS is a proceeding in probate. The issue between the
parties arises upon objections to the final report of the execu-
tor.. The objections were sustained, and he appeals.—*Affirmed.*

· *S. W. Livingston,* for appellant.

*Wilson & Wilson* and *Marsh W. Bailey,* for appellee.

EVANS, J.—The parties are brothers. They are the sons
of John Townsley, deceased, and beneficiaries of his estate.
W. D. is the executor of his father's estate. His final report
1. ESTATES OF
DECEDENTS : re-
ports : set-off :
evidence.
as such was objected to by Charles in the fol-
lowing respect: In distributing the estate, the
executor applied the share of Charles upon a
$1,500 note, executed in 1902 by Charles to his father; such
note being in the possession of the executor. The objection of
Charles to such application was based upon the allegation that
the note had been paid to his father in the year 1905. Charles
also set out with his objections a copy of a formal writing
executed by his father in July, 1905, acknowledging the pay-
ment of such debt. To such pleading the executor filed a reply,
averring that the writing set out by Charles had never been
delivered to him by the father, and was therefore of no effect.
It appears without dispute in the record that in 1902 Charles
did execute to his father a note and mortgage for $1,500. It
appears, also,- that on the 12th day of July, 1905, the father

executed a formal written release of such mortgage. One of the recitals of such release was that the mortgage "is redeemed, paid off, satisfied, and discharged." Such release was duly recorded on July 13, 1905.

On the trial Charles, being in possession of such release and the original mortgage, put both in evidence, and rested. It is needless to say that such release was abundant proof to sustain the order of the trial court, in the absence of some appropriate explanation or contradiction thereof. In contradiction thereof, the appellant relies wholly upon circumstances, which are substantially as follows: In March, 1905, the father gave to his son W. D. a power of attorney to act as his agent, and from that time forth W. D. did much of the business of the father. He testified to the extent of his knowledge that the note had not been paid. At the time in question the father was under no mental disability to transact his own business, except the ordinary indispositions of his age, which was seventy-nine years at that time. The power of attorney expressly recognized his right to transact his own business. He kept the actual possession of his notes for several years after such date. He died in 1911, at the age of eighty-five.

We are clear that the testimony of the executor is not sufficient to overcome the written release. The executor also lays stress upon an alleged conversation between him and his brother Charles after the death of the father. The executor testified to such conversation as follows:

After the death of John Townsley, I had a conversation with Chas. E. Townsley with reference to the note in dispute for $1,500. I think this was probably the last of April, 1911. In the conversation about this $1,500 note, he came to my house and wanted to see the note, and I told him I did not have the note, that it was at Eicher & Livingston's law office, that I had copies of it, that I could give him the date, and payments, etc., and he said that his impression was that the note had been paid, and I went upstairs, and came back down, and began to read them off to him, and he then said, if I held the note, why he guessed that it had not been paid.

As against this, Charles testified in denial that he had never said that he guessed that the note had not been paid. Some stress is laid by appellant in argument upon the fact that Charles did not testify upon the trial that the note had been in fact paid.

If Charles had been a competent witness to testify to such a fact, the circumstance would not be without its significance. In view of his clear incompetency to testify to a personal transaction with his father, the circumstance is entitled to no weight whatever. If Charles was not ready and willing to testify to such fact, the executor could have put him to the test, either by calling him as a witness, or possibly by tendering a waiver of objection to his competency. Upon the state of the record before us, we would not be justified in fixing any suspicion upon the objector for his failure to offer to testify to a personal transaction between himself and the deceased.

2. SAME: evidence: transactions with a decedent.

The further circumstance is urged that the father made a will in 1908. In such will he recited certain notes which he then held against Charles, being five in number. This recital included the $1,500 note in question. Such mere recital in the will of the father could not, of course, be binding upon Charles as creating affirmative liability against him. It would have been competent for the testator to charge such amount against the share of Charles, whether he was right or wrong in including it as an existing indebtedness; but he did not do so. He simply required the share to be applied to such of the notes as remained unpaid at the time of his death.

3. WILLS: recital of claims: evidence of liability.

The appellant does not claim that this provision of the will conclusively requires him to apply the share of Charles upon this note; the amount of the note being greater than such share. On the contrary, the parties stipulated that the determination of the issues made should operate as an adjudication of the question of the liability of the maker as to the whole note.

II. The case is triable here on errors only. The contention of appellant that it is triable de novo cannot be sustained. The case presents no equitable issue. It was never on the equity side of the court below. It was a mere proceeding in probate. The prayer of the executor's reply that the written release be held null and void presents nothing for the consideration of the equity side of the court. Such prayer is based upon the allegation that the release was never delivered. This allegation is all-sufficient as a defense thereto, and the appellant would have no need of affirmative equitable relief. Neither is it the function of the reply to pray for affirmative relief.

4. SAME: reports: appeal: trial de novo.

The finding of the trial court has the force and effect of a verdict. From what we have above set forth, it is clear that the finding in this case has abundant support in the record.

The order entered below is therefore—*Affirmed*.

LADD, C. J., and WEAVER and PRESTON, JJ., concur.