D. W. SUTHERLAND, Executor, Appellee, v. ALLEN G. BRIGGS et al., Appellants.

EVIDENCE: Declarations—Intent or Purpose—Satisfaction of Instruments. On the issue whether a deceased executed, on a public record, a marginal *satisfaction of the instrument* there recorded, (a) for the sole purpose of satisfying the *lien* of the debt which the instrument evidenced, or (b) for the larger purpose of wholly satisfying and forgiving the *debt* itself, declarations of the deceased, relative to what she was going to do

about the instrument and the satisfaction thereof, made prior to and about the time she executed said satisfaction, are material and admissible.

WITNESSES: Impeachment—Matters Contradictory by Mere Inference. A witness may not be impeached by statements made out of court, when such statements can only be held contradictory of what the witness has stated in court *by indulging in mere inference, unsupported by the record.*

EVIDENCE: Admissions—Inconsistent Conduct. Conduct upon the part of a litigant inconsistent with his final claim in court is admissible as a circumstance tending to impeach the *bona fides* of the claim which he finally makes. So held where devisees who were partial beneficiaries under a will first attacked the validity of testatrix's will on the grounds of undue influence and mental incompetency, and, their objections being overruled, later made claim that, by reason of a transaction with testatrix, they acquired substantially her *entire* estate, prior to her death.

EVIDENCE: Relevancy, Materiality, and Competency—Inventories and List of Heirs. On the issue whether a testatrix had, prior to her death, given substantially her *entire* estate to two grandsons, the inventory and list of heirs filed under the will are admissible, as bearing (a) on the property and heirs left by testatrix, (b) on the reasonableness of said claimed gift, and (c) on the significance to be given to the fact that said alleged donees first attacked the validity of the will, and, said attack being unsuccessful, later interposed said alleged claim of gift.

EXECUTORS AND ADMINISTRATORS: Inventory—List of Heirs —Presumption. A duly verified inventory and list of heirs are presumed to be correct.

EVIDENCE: Declarations—Self-Serving Declarations. On the issue whether a contract which evidenced a debt had been wholly forgiven and satisfied by payee prior to her death, evidence is admissible to show that deceased caused the instrument to be executed, caused it to be recorded, and, through her attorney, thereafter retained possession thereof until her death. Such testimony by such attorney does not, in effect, constitute self-serving declarations by the deceased payee.

EVIDENCE: Relevancy, Materiality, and Competency—Admission of Part of Conversation. Disclaimer by a witness of any remembrance of an alleged conversation with a party to an action does not open the door to such party to testify to such conversation on the theory that such disclaimer constituted a testify-

ing to a *part* of the conversation, especially when such theory is, very clearly, a mere pretext for the injection into the case of self-serving declarations.

MORTGAGES: Release and Satisfaction—Evidentiary Effect—Erroneous Instructions. A marginal satisfaction of a duly recorded instrument is prima-facie evidence of the extinguishment of the debt, and the court should not belittle the effect of such satisfaction by stating that it creates a "*mere*" presumption of extinguishment.

TRIAL: Instructions—Weight and Sufficiency of Evidence—Belittling Evidence. It is not the province of the court to belittle the evidence on a given point. Instructing that a duly executed marginal satisfaction of an instrument evidencing a debt creates a "*mere*" presumption that the debt is discharged, may constitute error.

EVIDENCE: Admissions—Admissions by Conduct—Weight and Effect. The weight to be given to inconsistent, but explainable, conduct on the part of a litigant is solely for the determination of the jury, and instructions which, even impliedly, leave the jury to understand that such conduct is *necessarily* conclusive on a given point, are erroneous. So held where one continued to recognize the existence of a debt *after* the execution of a release on which he relied.

EVIDENCE: Declarations—Self-Serving Declarations—Subsequent Impeachment of Instrument. A duly executed prima-facie satisfaction of an instrument which evidences a debt may not be impeached by the subsequent self-serving declarations of the one executing the satisfaction.

TRIAL: Instructions—Province of Court—Belittling Defense. It is not the province of the court to disparage a defense. So held where the court told the jury that the defense in question was one easily fabricated.

*Appeal from Audubon District Court.*—J. B. ROCKAFELLOW, Judge.

FEBRUARY 16, 1918.

ACTION by executor of the estate of Sarah Briggs, deceased, against defendants on a contract, resulted in judgment as prayed. The defendants appeal.—*Reversed.*

     *J. M. Graham, Joe H. Ross,* and *S. C. Kerberg,* for appellants.

     *O. W. Emmons* and *Lee & Robb,* for appellee.

     LADD, J.—Sarah Briggs died testate February 22, 1913, and, upon the admission of her will to probate, D. W. Sutherland was appointed executor of her estate. In this action, recovery is sought by him upon an article of agreement between decedent and her grandsons, defendants herein, in words following:

     "This article of agreement made and entered into and executed in triplicate on this twenty-third of August, 1907, by and between Sarah Briggs, party of the first part, and Frank W. Briggs and Allen G. Briggs, parties of the second part, witnesseth: The said Sarah Briggs, has the sum of fifty hundred ($5,000) dollars, which she has loaned to the said second parties and which they have invested in the Northwest Quarter of Section Thirty-Three of Township Number Eighty-One, North, of Range Thirty-Six, West of the Fifth Principal Meridian, Lincoln Township, Audubon County, Iowa, and on which land all the parties at the present time reside. There are no papers showing this loan. The said first party hereby states all interest accruing on this amount of five thousand dollars ($5,000) will be paid up to the first day of March, 1907, by the second parties this day, and this agreement is a settlement of all matters relating to said loan to March 1st, 1907. First party also agrees to leave the said money in the possession of the second parties as long as this contract remains unbroken and as long as she shall live, provided this agreement be not violated; but she reserves the right to make ultimate disposition of the said amount of $5,000 by will or otherwise. The second parties hereby agree to pay the said first party in consideration of the above agreements and loan of money, the sum of two hundred dollars per annum

from and after the first day of March, 1907, as follows; $200.00 on the first day of March, 1908, and $200.00 on the first day of March of each year thereafter during the life of this contract, which payment of said sum shall be in full for the use of the said money belonging to the first party during the year ending on the date of payment. Said payments are to be made at the Bank of Manning, Manning, Iowa. Second parties also agree to consult first party should they desire to sell said land; and if they wish to sell, they agree to satisfactorily secure the first party in the sum due her before effecting said sale.

"In witness whereof the said parties have hereunto affixed their signatures on the day and year above mentioned.

> "Sarah Briggs, First Party.
> "Frank W. Briggs,
> "Allen G. Briggs, Second Parties."

This contract was duly acknowledged by the parties thereto, and filed for record December 14, 1907. The defendants pleaded, prior to any breach, that the above instrument was settled, satisfied, and discharged, same being evidenced by writing on the margin of the record of said instrument in the county recorder's office, in words following:

"These articles of agreement released this 22d day of May, 1908, by agreement of parties and certifying that money has been paid.

> "[Signed] Sarah Briggs.
> "[Signed] Frank Briggs.
> "[Signed] Allen G. Briggs, by
>> "F. W. Briggs."

They say that said contract and indebtedness evidenced thereby are discharged, and the executor estopped from claiming anything thereunder. Defendants further allege that decedent forgave them any unpaid portion of the amount owing on said instrument, and that the above writing was signed by her to satisfy the indebtedness and re-

lieve them from paying same. By way of reply, plaintiff put the allegations in issue, averred that the entry on the margin of the record was of no force or effect, denied that any such agreement had been made, or that the original contract ever was surrendered or cancelled or satisfied, and set up some other matters not necessary to recite.

I. The plaintiff introduced the above contract and rested. Thereupon, defendant, after showing that the entry in the margin of the record of said contract was written by the deputy recorder of the county, and signed as above indicated, introduced the same in evidence.

**1. EVIDENCE: declarations: intent or purpose: satisfaction of instruments.**

Mrs. Lilas Briggs, wife of defendant Allen G. Briggs, was then called as a witness, and, after testifying that she was acquainted with decedent, stated that the latter was at her home about May 22, 1908; that decedent went to Audubon with Frank W. Briggs on that day; and that before they went she had heard a conversation between decedent and Allen Briggs about the $5,000 contract. She was asked:

"Now, just tell the jury what Sarah Briggs said, if anything, about what she would do with reference to this contract,—what she was going to do about releasing it, or otherwise."

Counsel for defendant objected to the competency of the witness, and to the testimony, as incompetent and irrelevant to any issue in the case. The court expressed the opinion that the "objection is good, * * * independent of the statute, * * * on the ground that it is entirely immaterial; the intention or the expressed intention of what is sought or going to be done some time in the future." It was then explained that the court ruled that what was said was immaterial. We cannot concur in this view. One of the issues raised by the answer was whether decedent, in making the marginal entry, so did with the purpose of forgiving the debt. What she may have said at about the time

of satisfying the instrument would aid in ascertaining her purpose in what she did: i. e., whether merely to discharge the lien of the contract, or to satisfy the debt, as paid or as forgiven. Had the entry been a contract, a different question would have been presented; but it was not, and did not purport to be, other than a satisfaction of the articles of record. The objection should have been overruled.

II. The same witness testified to hav-

.2. **WITNESSES:** impeachment: matters contradictory by mere inference.

ing heard a conversation between Sarah Briggs and Allen Briggs when the former returned from Audubon; that, "when Mrs. Briggs came home, Allen was sitting there in the room, and she said that she had it released, and had it fixed so it was theirs. Mrs. Briggs came in, and she said she had that released, and that it was theirs. Allen asked her if it was this,—I believe he called it a contract; and she said 'yes,' that she had it released and that it was theirs." The witness was asked, on cross-examination, whether she "told Mrs. Esther Newell, at a sale held at Tom Newell's place, in the fall of 1913, that you did not want the boys, Allen and Frank, to buy a certain 40 acres of land, because they owed their grandmother something,—meaning Mrs. Sarah Briggs."

Over an objection as incompetent, immaterial, and irrelevant, not binding on the defendants, not made in their presence, and as not tending to impeach the witness, she answered that she did not remember telling anything of the kind to anyone, and, in response to another question, that she did not remember making the statement at any time.

Later, Mrs. Newell was called as a witness, and, after stating that she had attended the sale in the fall of 1913 at Tom Newell's, and that she had met Mrs. Briggs there, was asked:

"What is the fact about you having had a conversation with Mrs. Allen Briggs at that time with reference to

the boys, Frank Briggs and Allen Briggs, owing their grandmother something? Did Mrs. Allen Briggs say to you, at the sale in the fall of 1913, that she did not want the boys, referring to Allen and Frank, to buy that 40 acres, because they owed Grandma something?"

It will be observed that the one statement to Mrs. Newell, if made, was not necessarily contradictory of the testimony of the witness. Only by inference might it be construed even to be inconsistent therewith. If the witness referred to the contract, by "owing their grandmother something," then the inference would be that, in the witness' opinion, something was unpaid thereon; but what? The defendants concede that, even if it were cancelled, they were to pay her $200 per year until her death for her maintenance, and for all that appears, she may have had this in mind. But there is nothing to show that she referred to the contract, nor that she may not have referred to some other indebtedness. Moreover, notwithstanding what decedent may have said, the witness may have thought defendants liable on the contract. The record was such that it might not have been found that the one statement was contradictory of the other; and therefore Mrs. Newell's testimony should have been excluded, and there was error in overruling the objection thereto and in instructing the jury thereon.

III.  On September 4, 1911, decedent

3. EVIDENCE:
admissions:
inconsistent
conduct.

executed a will, beginning with this recital:

"All the property I own at the present time is the sum of five thousand ($5,000) dollars which I have loaned to my two grandsons, Allen G. Briggs and Frank W. Briggs, tenants in common. The said investment is not evidenced by promissory notes or a mortgage and the only written evidence thereof is one certain contract entered into and executed in duplicate on the 23d day of August, 1907, by and between myself and my two

grandsons aforesaid, which contract was recorded in the office of the county recorder of Audubon County, Iowa, on the 20th day of July, 1909."

Then followed provisions directing the payment of debts, expenses of last sickness and funeral; giving $300 to one son of her son Byron's; $100 to another son; and $1 to each of two daughters of said son; $100 to a granddaughter, Lilly Blake, daughter of her son Silas; $200 to Bert Baker, son of Silas and adopted by Mrs. Baker; $1,000 to her son Byron; to a son of her daughter Mrs. Baker, $200; $100 to each of the defendants,—specifying that this "shall constitute the full share of each of my grandsons of my estate and shall be in settlement of all board, lodging, care and maintenance and for all service of all kind and description that has been rendered prior to this time or that may be rendered and furnished subsequent to the date hereof and prior to my death by either of my above said grandsons or by any member or members of their families."

In the tenth paragraph, she left "all the rest, residue, and remainder of my property of whatever kind or description" to her daughter, Frances A. Baker.

To the probate of this will defendants objected, on the grounds: (1) That the will was the result of undue influence of Mrs. Baker, and not the voluntary act of decedent; and (2) that decedent, at the time of making the will, was of unsound mind. The will and objections were received in evidence, over objections. If the contract had been paid, or the indebtedness forgiven, the disposition attempted in the will would be quite immaterial to defendants, and their course in interposing objections was open to inferences inconsistent with the claim that the contract had been discharged.

Frank W. Briggs attempted explanation:

"I had my idea there was another will in existence, because we were to get the bulk of the money, and it seems

we did not have much time;" had but a few days, and had the attorney draw the papers, and "we signed them. I had information or knowledge of the execution of another will, instead of the one that has been offered here in evidence."

He further stated that he did not know anything about this will. This seems to emphasize, rather than obviate, the inference that they were not relying on the discharge from the obligation of the contract, but looking for interest therein through inheritance or bequest, by preventing the probate of the will. There was no error in the ruling.

V. Over objection, the inventory, in-

4. EVIDENCE: relevancy, materiality, and competency: inventories and list of heirs.

cluding list of heirs, duly sworn to, was received in evidence. Therefrom it appeared that decedent left her surviving a son and daughter, and besides their children, a grandson and granddaughter, children of a deceased son, and defendants, being sons of a deceased son; and, besides the contract, a certificate of deposit of $300, another of $150, and an account of $200 due from Allen G. Briggs and Frank W. Briggs as interest on $5,000 from March 1, 1912, to March 1, 1913.

5. EXECUTORS AND ADMINISTRATORS: inventory: list of heirs: presumption.

This paper, though prepared by an attorney, was such an one—though usually in two parts—as the executor, under the law, was required to file; and, in the absence of any showing to the contrary, is presumed to be correct; and there was no error in receiving it in evidence, as tending to show the heirs of decedent and what, if any, property she left, as bearing on the reasonableness of defendants' contention that she had forgiven them the debt of $5,000, and on the significance to be given the objections by them interposed to the admission of the will to probate. Of course, inventorying the contract was of no significance as bearing on whether the in-

debtedness evidenced thereby had been paid or forgiven, and doubtless the jury would have been so specifically instructed, had this been requested. No error here.

VI. O. W. Emmons testified to having

**6. EVIDENCE: declarations: self-serving declarations.** acted as an attorney for decedent, and also the executor; that he prepared the contract sued on; and, over objection, that, at decedent's request, he sent the contract to the recorder of Audubon County, with instructions to record the 'same on July 20, 1909, and thereafter had the same in his possession until the death of decedent. This is said to be evidence of a declaration of decedent in its nature self-serving, and, for that reason, inadmissible. It no more than indicated what was done with the contract, and it was competent to show that decedent retained and controlled this, up to the time of her death. Though executed in triplicate, that delivered to her evidenced the obligation of defendants to her, and it was a material circumstance that she retained it and treated as subsisting until she departed this life. The ruling has our approval.

VII. The executor, to the payment of

**7. EVIDENCE: relevancy, materiality, and competency: admission of part of conversation.** $200 by defendants in September, 1913, said that the payment was made by the defendant Allen G. Briggs; that he did not remember the conversation had at the time; that he did not think there was much said; and that he did not want to say that Allen did not tell him at that time that he did not owe the $5,000.

Allen Briggs was thereafter called by the defendant, and testified that he had heard Sutherland's testimony, and remembered the incident of giving him a check for $200; that he told him they owed their grandmother that amount, and had been "paying her ever since the release, to keep her; that we had been paying her $200 every year; that it was to keep her, since she released the contract and gave

it to us. I told him about this contract, Exhibit I, for
$5,000, at that time. Q. What did you tell him about that
at that time?" An objection as immaterial, incompetent,
and self-serving declaration and hearsay was sustained;
and, notwithstanding persistent efforts of counsel, the court
excluded anything said by the witness concerning the $5,000
contract, and on motion struck out that previously testi-
fied to. The main complaint is that, though the executor
had given a part of the conversation, the court excluded
the remainder on the same subject. The vice of the argu-
ment lies in the assumption that the executor had so testi-
fied. He expressly disclaimed ability to recall any of the
conversation. He did testify to his own supposition, and,
had defendants wished this excluded, they should have so
requested. Not having done so, they are not in a posi-
tion to complain, nor to make such statement the basis for
complaint of the court's ruling in excluding evidence of self-
serving declarations, on the specious pretext that these were
part of a conversation of which there was, in fact, no evi-
dence.

VIII. In the second instruction, the
court told the jury that:

8. MORTGAGES:
release and
satisfaction:
evidentiary
effect: er-
roneous in-
structions.

"The marginal entry signed by the de-
cedent, Sarah Briggs, and the defendants
herein, * * * is presumptive evidence
that thereby the said Sarah Briggs dis-
charged the defendants herein from all liability. * * *
This is a mere presumption of law, however, and is not
conclusive upon said question; but the plaintiff may over-
come such presumption and show that, notwithstanding
said marginal entry aforesaid, said debt and the obligation
of the defendants to pay the same, mentioned in said Ex-
hibit 1, still exists; and, before the plaintiff can recover
in this action, he must show, by a preponderance of the
evidence, that, notwithstanding the entry made upon the

margin of the said record, that the defendants were not released or discharged from the payment of the said sum of $5,000; and this is a question of fact for your determination, after full consideration of all the evidence throwing light thereon. In order to overcome the said presumption hereinbefore referred to, and which is implied by law, by reason of the marginal entry made in Record G, page 269, in the recorder's office, it is not necessary that the evidence on said point should be direct; but the evidence will be sufficient if all the facts and circumstances throwing light thereon, and which are in evidence before you, satisfies you that the decedent, Sarah Briggs, did not release the defendants from liability upon the contract sued on herein. Or, if you are satisfied from the evidence that the defendants, after making of said marginal release by said Sarah Briggs, and if you believe from the evidence that, subsequent to said marginal release, recognized the indebtedness as still existing from them to Sarah Briggs or to her executor, or her estate, this will be sufficient to warrant you in finding that, by the said marginal release, the defendants were not discharged from payment of said indebtedness under the contract sued on herein."

The function of a marginal entry in the recorder's office is the release of the instrument recorded. Such a release is prima-facie evidence of the extinguishment of the debt secured. *Kuen v. Upmier,* 98 Iowa 393; *Will v. Brookhart,* 149 Iowa 426. To have designated the entry as prima-facie evidence of payment of the debt would have been more accurate; but they say that the marginal entry "is sufficient in itself to raise a presumption in the first instance that the debt evidenced by the contract sued on * * * was paid, released, and discharged." However this may be, the jury would not be likely to draw any fine distinction between the use of "pre-

<p style="margin-left:2em">9. TRIAL: instructions: weight and sufficiency of evidence: belittling evidence.</p>

sumption" here, instead of "prima-facie;" but the statement that the entry raised a "mere presumption" had a tendency to belittle the significance of the entry. It recited not only that the contract recorded had been released, but asserted that "money had been paid;" and the natural inference was that this had been applied on the contract recorded. In view of the place of the entry, it is not to be said that it was intended to be a contract. Its manifest object was to clear the record; and, inasmuch as more was said than strictly essential to the accomplishment of this, the weight to be accorded to such entry was for the jury to determine, in view of all the circumstances surrounding the transaction. The language of the instruction might well be construed that its only consequence was to cast the burden of proof on the executor to prove the non-discharge of the obligation.

10. EVIDENCE: admissions: admissions by conduct: weight and effect.

Nor can the last sentence of the instruction be approved. If defendants, subsequent to the making of the marginal entry in any manner, recognized the indebtedness as still existing, this would be evidence against their contention, and, of course, might be found sufficient on which to base a finding that the indebtedness had not been discharged. But this is not the necessary consequence of such recognition, as the jury might well have inferred, in the absence of explanation that such admission was not necessarily conclusive, and that the weight to be accorded thereto was for their determination. As these matters were not touched in other instructions, the jury may not have understood that the weight to be given to the evidence of the marginal entry, and of admissions or conduct equivalent to admissions, was solely for their determination; and on this ground, the instruction is disapproved.

IX. In the fourth instruction, the court told the jury that:

11. EVIDENCE: declarations: self-serving declarations: subsequent impeachment of instrument.

"Where a person is in possession of personal property, the acts and declarations of such person with reference to such property, explanatory of the right by which such person claims to hold such property, is receivable in evidence; and in this case, the acts and declarations of the decedent, Sarah Briggs, such as recording the said instrument the second time, as above stated, and the making of her last will and testament, which is in evidence before you, making disposition of the debt sued on herein, and evidence, if any, of like character, together with all other facts and circumstances in evidence throwing light thereon, may be considered by you in determining whether or not the debt hereinbefore referred to, and which the defendants were obligated to pay, by the terms of said instrument, amounting to the sum of $5,000, and interest thereon at the rate of $200 per annum, was in fact released, discharged, and fully settled, as claimed by the defendants in their answer, by virtue of the marginal entry in the recorder's office heretofore referred to."

It will be borne in mind that the only issues submitted were whether the indebtedness evidenced by the contract had been (1) paid or (2) forgiven; and we are of opinion that decedent's subsequent declarations might not be considered as bearing thereon. Of course, the declarations of one in possession of personal property are admissible in explanation thereof, as bearing on whether as owner or by virtue of some other right. *Nodle v. Hawthorn,* 107 Iowa 380. But that issue was not involved. Unless discharged, decedent owned the contract. If discharged, it was of no more consequence than a blank piece of paper, and if not discharged, its possession was not essential to its enforcement. In either event, the paper, as such, might have be-

longed to her. Declarations, then, were of no materiality, save as they bore on whether the contract was discharged; and plainly enough, these were self-serving, and for that reason not admissible under the specious pretext of being explanatory of possession, or to be considered as such. The instruction was erroneous.

X. In Instruction No. 3½, the court directed the jury to "view with care and caution, on account of the ease with which evidence of the forgiveness of debt may be manufactured when the claimed donor is dead." This was followed by a disclaimer of a purpose to prejudice against such a defense, but nothing to obviate the disparagement of such evidence. We suggest that the weight to be accorded evidence is to be passed upon by the jury, and this should be done without disparagement from the bench.

12. TRIAL: instructions: province of court: belittling defense.

Owing to the errors pointed out, the judgment is—*Reversed*.

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.