HATTIE BALL LARSON, Appellee, v. AMES CHURCH OF CHRIST et al., Appellants.

No. 41040.

JANUARY 12, 1932.

Lee, Steinberg & Walsh, for appellee.

Ray P. Scott, for appellants.

DE GRAFF, J.—This action involves the foreclosure of a real estate mortgage as to the balance due thereon. The defendants in their answer plead payment of the mortgage indebtedness and tender in proof a release on the margin of the record of said mortgage. A release of the mortgage is prima-facie proof of payment. The sole question before us is whether the facts pleaded and proved by plaintiff are sufficient to overcome the prima-facie case so established by defendants.

It appears from the record without dispute that the Ames Church of Christ purchased four separate lots as a site for their new church sometime in 1920, among which was a lot called the Dunning lot, the one in question. The purchase price of this lot was $4200, of which $1600 was paid in cash at the time of purchase. The church borrowed from the Story County Trust & Savings Bank at Ames, Iowa, the sum of $2600 on a note, securing same by mortgage on said Dunning lot. The money so borrowed was to pay the balance of the purchase price. While the money was furnished by the said Story County Savings Bank, the note and mortgage were executed to Parley Sheldon, who was the president of this bank. After the execution of the note and mortgage to Sheldon, he executed an assignment of the mortgage to the bank and endorsed the note in blank. The assignment of the mortgage, however, was not recorded. The note and mortgage by their terms matured November 1, 1924. At the time the church purchased this particular lot, a church drive was made and pledges were secured from members of the church in the sum of $2600, which was proposed to be used to pay the indebtedness before the note and mortgage matured. These pledges were to be collected by A. J. Scott, one of the trustees of said church and one of the defendants herein. When

the pledges were collected; they were placed in a savings account in the Story County Trust & Savings Bank. This savings account is known in the record as No. 155, and as the sums accumulated from time to time from these pledges, they were applied upon the $2600 note until the year 1922, when the principal indebtedness was reduced to $700, which is the amount involved in this foreclosure action. In September, 1923, the matter of these pledges was called to the attention of the church board, and it passed a resolution by which the pledges so far unpaid were cancelled, the collections audited by a committee of the board, and the matter as to further collections on said pledges was closed.

On November 23, 1923, the interest at 6% on the balance of $700 was paid to the bank out of the deposit in the savings account No. 155. This left a balance in this account of $7.06.

It may be mentioned at this time that Parley Sheldon had been the guardian of the plaintiff Hattie Ball prior to her marriage to Larson. She reached her majority in 1920, and at that time (Nov. 22nd) the guardian Sheldon turned over to Hattie the sum of $1297.13, which was used in part to pursue a commercial course, and she later secured a position in the Extension Department of the Iowa State College at Ames, Iowa. After paying for her training, she left her funds with Mr. Sheldon to invest for her. Shortly prior to the 15th of May, 1924, she had on hand sufficient funds to purchase the mortgage note heretofore mentioned, upon which there was then owing the balance of $700. An assignment was executed by Mr. Sheldon to Hattie Ball Larson, and the old assignment from Sheldon to the bank was destroyed. This assignment to Hattie, like the first assignment to the bank, was not recorded, but the note, mortgage, and assignment, together with the abstract of title, were taken from the assets of the bank and were placed by Sheldon in a chest or drawer in a safe where he kept the trust papers of his clients.

The difficulty in this case is traceable to Sheldon, who failed to place on record the assignment to his former ward, Hattie Ball (Larson), and it may be stated that the Ames Church of Christ, or the trustees thereof, had no notice, either actual or constructive, that the instant plaintiff had any interest in the mortgage in question.

Upon the trial the defendant trustee Scott testified that on

November 1, 1924, the due date of said note, he went to Mr. Sheldon's office and paid him in checks and money the sum of $742, and on that occasion Mr. Sheldon turned over to him the note, mortgage, and the abstract of title. At that time Scott took with him a Release or Satisfaction Piece for Sheldon to sign; but he declined to do so, stating to Scott, in effect, that he (Sheldon) did not do business that way, but that he would enter a release upon the margin of the mortgage record in the office of the County Recorder of Story County at Nevada, Iowa. This, Sheldon failed to do, until Scott, who is a lawyer, upon the examination of the abstract, learned that the mortgage had not been released of record. Thereupon, Scott visited Mr. Sheldon and advised him of his oversight in the matter, as per his promise of November 1, 1924, to release said mortgage on the margin of the record. This conversation occurred March 17, 1927, and Sheldon thereupon went to the County Recorder's office and made the marginal record releasing the mortgage. There is no question concerning this fact. This release consequently had been on the record unchallenged from on or about March 17, 1927, until the filing of this suit, in May, 1929. The plaintiff at no time during the period in question ever made demand for the interest due on the $700 remaining unpaid, as claimed by her, nor, as far as the record discloses, did she ever talk to Mr. Sheldon concerning the matter.

The note and mortgage were not offered or introduced upon the trial of the instant case, for the reason that the fair preponderance of the evidence discloses that the note and mortgage were burned by the church authorities in a celebration commemorating the discharge of this indebtedness, which had been the cause of much anxiety during its existence. Several witnesses testified regarding the burning of the note and mortgage in question on April 6, 1927. Mr. J. J. Grove, who was master of ceremonies at the time of the burning of all the evidences of indebtedness, announced at that meeting: "This is the burning of the last evidence of indebtedness against our new church site." A Mr. Browning corroborated Mr. Grove's statement. Mrs. Howard Adams testified relative to the burning of the evidences of the church indebtedness, as also did a Mrs. Bennett, and Mr. Fred Randau, who, as chairman of the church board, presided at the celebration. Randau further testified that Mr.

934

J. J. Grove read the written documents before they were burned. The testimony of Mr. Grove shows that he "took particular note of that mortgage, and my examination showed that it was paid, stamped paid, and the mortgage and note were together."

True, some evidence offered by the plaintiff tends to show that, at the time trustee Scott claims to have had possession of the note and mortgage in question, the same were in the office of Parley Sheldon. One witness, who was cashier of the Story County Trust & Savings Bank, testified that sometime in 1926 he "happened to run across this note and mortgage of the Christian Church. My mind is well settled on that being at least two years afterwards (due date of note and mortgage), for the reason that I noted at the time there were two years' delinquent interest, and it seemed queer, as I remarked to Mr. Bennett at that time, there was something wrong that the interest hadn't been paid on that note." Another witness, who had been an employee of the Story County Trust & Savings Bank, testified that he saw the papers in question in November, 1924, and that they were in a drawer in which Mr. Sheldon kept a large number of papers for which he was responsible. He further testified that he never saw any of these papers after May, 1926. In the light of all the testimony in this case, it is our conclusion that these two witnesses must have been and were mistaken as to the matter to which their testimony is directed.

The plaintiff-appellee also urges in her brief and argument that the defendant trustee Scott was not able to show satisfactorily by his evidence the source of the money which was claimed by him to have been paid to Sheldon at the time the claimed marginal release was promised by Sheldon, and which Sheldon unquestionably signed on the margin of the record in March, 1927. It is satisfactorily shown that a second drive was put on by the church to secure the necessary · funds to pay the outstanding balance of the church mortgage. We do not seriously view the fact that trustee Scott could not detail the individuals or church organizations which contributed to the second drive or the respective amounts so contributed or the time when such donations were made. We may recognize the fact that bookkeeping methods used by a church or its organizations are practically nil, and it is not strange that after approximately five years the

contributors to the second drive would not remember the details respecting the time or the amount of their respective donations.

We now turn to the legal phase of the instant appeal. It may not be said that the instant mortgage was released of record by a mistake. If Parley Sheldon, as agent for the plaintiff, collected the balance due on the note, the plaintiff is estopped from denying the legal efficacy of the release signed by him. The action instituted by the plaintiff is in essence for a breach of contract for the non-payment of a specified sum of money. We said in Brenton Bros. & Leach v. Hill, 197 Iowa 125:

"This court is firmly committed to the rule that, in actions upon contract where the breach relied upon for a recovery is a failure to pay according to the terms of the contract, and non-payment is alleged, the burden is upon plaintiff to establish such non-payment, even though the defendant has pleaded payment."

See, also, Howerton v. Augustine, 130 Iowa 389.

The law is well settled that a release of a mortgage, as in this case, is, in itself, prima-facie evidence of payment, and the release imports extinguishment of the debt, as well as the mortgage; and the burden of showing that it is not so intended is on the creditor. It is sufficient to cite our own decisions involving this proposition. Will v. Brookhart, 149 Iowa 426; Sutherland v. Briggs, 182 Iowa 1170; Kuen v. Upmier, 98 Iowa 393; Townsley v. Townsley, 167 Iowa 226; Shaffer v. Zubrod, 202 Iowa 1062.

The plaintiff herein used as witnesses the defendant trustee Scott, Reverend H. A. Browning, pastor of the Ames Church of Christ, and several members of said church. By so doing, the plaintiff cannot be heard to say that said witnesses are unworthy of belief. Hunt v. Hoover and Hoover, 34 Iowa 77; Wilson v. Prettyman, 195 Iowa 598; Harvey v. Phillips, 193 Iowa 231; Kelley v. Kelley, 189 Iowa 311; North American Nat. Ins. Co. v. Holstrum, 208 Iowa 722, 1. c. 731. We do not wish to be understood by the statement that the plaintiff-appellee vouched for the credibility of the defendant trustee Scott, and others of defendant's witnesses used by the plaintiff as witnesses, as held in the Hunt case, supra, that the plaintiff was precluded by this testimony from offering other testimony to contradict it. In other words, although the plaintiff did use the defendant and

other of defendants' witnesses as her own, it was still competent for plaintiff to show, if she could, that the fact was otherwise than is stated by the defendant Scott. Kelley v. Kelley, supra; North American Nat. Ins. Co. v. Holstrum, supra.

No positive evidence is produced in this case that the note in question was not paid. The most that can be said on behalf of the evidence for plaintiff is that it tends to create a doubt that the payment was made. On the contrary, we have positive evidence of the defendant trustee Scott that he paid the note to Sheldon, and this testimony is fortified by the record fact that Sheldon did execute a release of the mortgage, as heretofore stated. No mistake or fraud is pleaded by plaintiff-appellee. It would be a most unnatural and unusual thing on the part of Parley Sheldon, a successful banker and business man of Story County, to release the mortgage on the margin of the mortgage record unless there had been payment to him by the Ames Church of Christ. No one questioned in 1924 to 1927 the mental alertness or memory of Parley Sheldon.

The decree entered is—Reversed.

WAGNER, C. J., and EVANS, FAVILLE, ALBERT, MORLING, KINDIG, and GRIMM, JJ., concur.