IN RE ESTATE OF BLANCHE EVANS.

MABEL WAITE, Administratrix, et al., Appellants, v. ROBERT S. EVANS, Administrator, Appellee.

No. 45134.

April 2, 1940.

Rehearing Denied September 27, 1940.

Geiser & Donahue and Shaw & Shaw, for appellants.

Mitchell & Loth and F. E. Van Alstine, for appellee.

HALE, J.—The decedent Blanche Evans was married to George Evans, who was the father of a son by a former marriage. Decedent had no children. Appellants Fred Mead, L. E. Mead, and Alice Uglum, are the decedent's brothers and niece. The total estate is less than $7,500.

The husband and wife were killed by the overturning of an automobile on Sunday, October 13, 1935. No one witnessed the accident. Mr. and Mrs. Evans left their home at Gilmore City, riding in a Chevrolet coupe and planning to spend the

day at Bancroft. About 11 o'clock that morning, in the neighborhood of Algona, their car passed a car in which three women were riding who noticed that when it passed them the Evans car was traveling at a fast rate of speed and appeared to be out of control. The attention of the women being directed to a cloud of dust at the bottom of the hill, they stopped and informed one Erickson that they thought an accident had occurred. Mr. Erickson went down the road, but was delayed somewhat by taking the wrong road, and returned to his home to which the women and a Mrs. Richardson had returned, and they all then went to the scene of the accident. They found the car and sent word by a passerby to the sheriff and for an ambulance. The ambulance and an automobile wrecker arrived at about 12:30 p. m. Some delay was occasioned by difficulty in getting the car turned over, but about 1 o'clock, when turned, it was discovered that there was a woman in the car. Both Mr. and Mrs. Evans were dead. Evans, who was a strong, healthy man, 57 years of age, drove the car and his wife sat beside him in the front seat. They were driving on an east-and-west graveled road, traveling eastward up a hill and across a culvert. Their car had left the road and plunged over the right-hand embankment and turned upside down. It was found that the right-hand part of the top, over Mrs. Evans, was crushed down below the door glass, nearly to the seat level. The left-hand side, over Mr. Evans, was not so badly damaged, the glass being broken in the door and the windshield and steering wheel injured. Mrs. Evans was not robust, had been in poor health, and had lately had an operation and had her teeth taken out. The collision had forced her body down on the floor below the seat, and beneath her husband, so that she was at first not visible; while the body of her husband remained in the seat, with the head out of the door and feet at an angle to the right side of the car.

Mabel Waite was appointed administratrix of the estate of Blanche Evans and gave notice of her appointment November 12, 1935. She had no interest in either estate. In the inventory which she filed the heirs listed are L. E. Mead, Fred Mead,

and Alice Uglum. Robert S. Evans, the son by a former marriage, is the administrator of his father's estate. In the petition for administration of the estate of Blanche Evans it is alleged that she left surviving her no spouse and no children or direct heirs; that the petitioners are brothers of the decedent; that no will had been found; and that personalty of not to exceed $5,500 belonged to the decedent. On December 11, 1935, the administratrix filed her preliminary report giving the name of the decedent, date of death, alleging intestacy, and that decedent and her spouse died in a common disaster, and stating that her heirs are as heretofore named. On April 8, 1937, an application denominated by the appellee as a claim, was filed by Robert S. Evans, but was afterwards withdrawn; and thereafter, on March 3, 1938, Robert S. Evans, as administrator of the estate of George W. Evans, filed what he termed "Objections and Petition of Intervention," denying, among other things, that Blanche Evans left surviving her no spouse, and denying the claim of heirship asserted by Fred Mead, L. E. Mead, and Alice Uglum, or anyone for them or as averred in any report filed in this matter, and asking an order for hearing and for determination of matters touching the final distribution of the estate and for correction of the record and adjudication as to the lawful distribution of the assets, and the exclusion of claims of heirship that shall not be sustained by direct proof. To this petition of intervention demurrer was filed by Mabel Waite as administratrix, and Fred Mead, L. E. Mead, and Alice Uglum, which was not ruled upon, and thereupon an answer was filed by said parties claiming that they are entitled to the estate and are the sole heirs and beneficiaries, setting up the bar of the statute of limitations, and further, in another division, claiming an agreement of settlement with Robert S. Evans. To this reply was filed by Robert S. Evans as administrator. Hearing was had on the issues raised and evidence taken beginning on December 23, 1938, and on July 21, 1939, an opinion was filed by the court and on July 31, 1939, judgment and decree was entered finding the value of the estate of Blanche Evans to be less than $7,500, and, after the payment of the costs and

expenses, directing that it be distributed to Robert S. Evans, administrator of the estate of George Evans, deceased. The judgment denies to Alice Uglum, Fred Mead, and L. E. Mead, any right to participate in the distribution of the assets. Costs were taxed and directed to be paid out of the assets in the hands of the administratrix as part of the costs of administration. There was a further finding in regard to inheritance tax. To this decree Mabel Waite, administratrix, L. E. Mead, Fred Mead, and Alice Uglum, excepted except as to the order as to costs, and Robert S. Evans, administrator of the estate of George Evans, excepted to the holding of the court in its opinion wherein it states that ''from the evidence the question of survivorship cannot be determined,'' and to the court's refusal to find as a fact from the evidence that decedent was survived by her husband. A motion for new trial being overruled, the administratrix, Mabel Waite, on August 14, 1939, filed an application for authority to appeal and to permit the estate to remain in status quo until such appeal is determined; and on September 5, 1939, the court entered an order authorizing the appeal and making an allowance for expense thereof. Notice of appeal by the administratrix was given from all the adverse rulings of the court and the order, finding, and judgment made by the court, and from the allowance for costs of the appeal. Thereafter notice of appeal was filed by Robert S. Evans as administrator, from that part of the order and decree which fails and refuses to find as a fact that George Evans did in fact survive the decedent, in failing and refusing to make a finding to such effect, and from the order of the court permitting the administratrix to appeal from the original order of distribution.

We have, therefore, two appeals, as set out, and that of the administratrix of the Blanche Evans estate being first filed and being an appeal from most of the judgment and order, said administratrix, with Fred Mead, L. E. Mead, and Alice Uglum, will be termed appellants; and Robert S. Evans, as administrator of the estate of George W. Evans, will be termed appellee.

Both the husband and wife having died in a common

disaster to which there were no eyewitnesses, any determination as to survivorship would necessarily have to be found from circumstances and the situation at some time after the deaths occurred. Evidence was introduced bearing upon the condition of the bodies at the time of discovery. It was found that Mr. Evans had a skull fracture; that there were several black and yellow bruises on his face; a decided swelling on his neck; and a cut on the ear which indicated that it had bled. It was found that Mrs. Evans had sustained injuries to her chest, it being crushed and all her right ribs so badly broken that breathing would have been impossible. There was also a basal skull fracture, and one hand was nearly severed at the wrist. The argument of the appellee is that the conditions found indicated, in Mr. Evans' case, continued life and circulation of the blood, or Mr. Evans' body would, like that of his wife, have been free from such marks and swelling; that the absence of bruises on Mrs. Evans' body showed that her life ended instantly. Expert evidence was introduced as showing probable duration of life in each of the victims of the accident. The court heard and observed the witnesses, and came to the conclusion that it was impossible, from the evidence, to determine which of the spouses survived the other. Other questions arose in the case, as to the question of limitation, of delay in asserting the claim on behalf of the administrator of the George Evans estate, and also as to the question of a prior agreement between the two administrators. These matters were considered by the court and determined adversely to the appellants, and they make no serious claim in this appeal as to such matters. The court held that the entire estate of the decedent should go to her husband's estate, that the burden of proof was upon the appellants, and that, having failed to establish that Mrs. Evans did in fact survive her husband, appellants' claim must fail.

The principal issue, therefore, in this case, resolves itself into the question upon whom lies the burden of proof, appellants insisting that such burden lies upon the appellee, while appellee makes the contention that such burden is upon the ap-

pellants. The party having the burden of proving the particular order of death, in order to be preferred over his adversary, will fail where survivorship cannot be ascertained from the evidence. There have not been many cases of this nature determined by this court. There is no common-law presumption as to the order of deaths in a common disaster. The rule has several times been announced that the burden lies upon the party making the affirmative claim, so that, of the parties here, each insists that the other is the claimant. In the petition for administration the appellants affirmatively averred that the deceased "left no spouse her surviving."

■ Discarding skillful and technical pleadings, it would appear more reasonable that the burden of proof cannot be determined by any such hard and fast rule as the one which requires the pleader of an affirmative proposition to sustain such burden. Appellee argues, and we think correctly, that the rule which must guide us is as stated in 18 C. J., page 871, section 124:

" * * * to establish one's right as heir or distributee of an estate, he must allege every fact necessary to support such right, including the fact that there are no other relatives entitled to take in preference to him, * * *:"

And further that:

"Where the claimant's right to inherit depends upon the death of persons who, if living, are the heirs of the decedent, he has the burden of proving their death or of proving facts from which their death may be legally presumed." 18 C. J., page 872, section 126. And: "To establish the right of persons claiming as heirs or distributees the evidence must be sufficient to satisfy the court that the alleged intestate is dead, that the claimants are so related to him as to be his heirs or next of kin, and also that there are no other persons entitled to take in preference to them." 18 C. J., page 874, section 129.

The decedent had a husband who would take her estate in preference to her brothers. The general rule as laid down

above would seem to indicate, therefore, that the appellants must negative the existence of persons entitled to take in preference to them; in other words, that remote takers, in order to inherit, must prove the absence or nonexistence of others who, if existing, would be entitled to a prior right.

This rule is recognized by many courts. In the case of Sorensen v. Sorensen (determined by the supreme court of Nebraska in 1903, opinion by Dean Pound), 68 Neb. 483, 94 N. W. 540, 542, 98 N. W. 837, 100 N. W. 930, 103 N. W. 455, in a contest between decedent's brothers and sisters on the one side and the alleged son of the decedent on the other, the question arose. as to which party had the burden against the other. The court held that the burden of negativing the existence of closer heirs was upon the brothers and it was therefore their duty to disprove the son's relationship. The question of the right to open and close was determined in favor of the brothers, for the reason, as given in the opinion, that:

"Brothers, and children of deceased brothers and sisters, of an intestate, are not prima facie heirs and distributees, and must allege and prove that there are no persons of the several classes which would take before them * * *."

The opinion further states that even an admission that petitioners for distribution are brothers and nephews and nieces of the intestate, and are heirs and distributees unless a person named is proved to be the son of the intestate and his sole heir and distributee, would not relieve the petitioners of the necessity of making a prima facie case. If no evidence were introduced by either party they would fail, notwithstanding the heir's gratuitous assumption of the burden of proof. Dean Pound's opinion cites a number of authorities, and the holdings therein support the general rule above stated. The fact that to sustain the appellants' claim they must establish negative averments is of no consequence. This court has often held that where the right of one party depends upon some certain status or condition, the burden is upon him to prove any negative fact necessary to establish the same. See Clendenning v.

Simerman, 220 Iowa 739, 741, 263 N. W. 248, 249; Andrew v. Boyd, 213 Iowa 1277, 241 N. W. 423; Larson v. Ames Church, 213 Iowa 930, 239 N. W. 921; Loranz & Co. v. Smith, 204 Iowa 35, 214 N. W. 525, 53 A. L. R. 662. See also, 5 Wigmore, Evidence, 2d Ed., section 2486.

The holding of the Sorensen case, supra, is in accord with our own decisions. One of the earliest cases was Anson v. Stein, 6 Iowa 150, 151, which was an action to recover possession of real estate, and the question arose as to one party being the heir. The rule was there laid down:

"Where a party claims as heir, he must first establish, affirmatively, his relationship with the deceased; and secondly, negatively, that no other descendant exists to impede the descent to the plaintiff."

This has been the rule in Iowa; and in the recent case of Wehrman v. Farmers & Merchants Savings Bank, et al. (decided in 1936), 221 Iowa 249, 259 N. W. 564, the rule was adhered to. This was a contest between collateral heirs and the surviving husband of the deceased and father of her twin children, the mother and the two children dying at the time of their birth and assertedly at the same time. Several questions arose in the case and especially as to whether or not the evidence showed survivorship of one or both of the children, and necessarily the question of burden of proof. After an extended review of the facts, the opinion, written by Justice Richards, 221 Iowa 249, 260, 259 N. W. 564, 570, 266 N. W. 290, goes on to say:

"Of importance, under such a record, is the matter of burden of proof. The district court, at the outset of the trial, ruled properly in placing the burden on the American and Danish heirs. These heirs were seeking partition, basing their title upon inheritance through the deceased parents of the deceased devisee, Irene Kunze. As heirs they belong in a deferred class. They had a right to inherit only as a class substituted for other classes of more nearly related heirs. These

classes of more nearly related heirs, if in existence, would have taken the property through Irene Kunze to the exclusion of the American and Danish heirs. It was then incumbent on the American and Danish heirs to affirmatively show that as a deferred class of heirs there existed no heirs of any classes having a priority right to inherit.'' The opinion then cites Anson v. Stein, supra, and proceeds: ''Consequently, in viewing the evidence, the question to be determined is whether the American and Danish heirs have proved by the greater weight of the evidence that neither of the infants in question attained individual existence after delivery.''

We think the rule is established that distant heirs have the burden of establishing the absence of any persons entitled to take preference over themselves.

The authorities cited by appellants do not contradict the rule laid down in the foregoing cases. The case of Graybill v. Brown, 194 Iowa 290, 189 N. W. 726, turned wholly, as the opinion states, on issues of fact and no disputed legal proposition was involved. The evidence was reviewed and held insufficient to establish that the wife survived the husband. Carpenter v. Severin, 201 Iowa 969, 978, 204 N. W. 448, 451, 43 A. L. R. 1340, did not involve the statutes of descent, nor intestacy. The question was as to the construction of the will and the substitution of the defendant as beneficiary. The case reviews the common-law rule, and authorities on the question of presumption of survivorship where death occurs in a common disaster. There is an interesting discussion, but we think nothing that can assist us much here. The general rule is laid down, one which cannot be disputed, that:

''In the last analysis, we are thrown back upon the statement that survivorship must be proved by the party asserting it, which simply means that he who has the burden must, in the absence of sufficient evidence, fail.''

Other cases cited by appellants mainly involve the proceeds of life insurance policies, or construction of wills, and turn

mostly upon the question of intent. They are of no benefit in determining the question with which we are here concerned. We think the rule as established by our former holdings is a necessary one, and that the burden in this case was upon the collateral relatives, and they having failed to sustain that burden, the estate must necessarily go to the husband's representative.

Even if the appellants are correct that the finding of the court was that both persons had died in a common disaster and survivorship could not be determined, this would not affect the rule in this case, which we find to be governed by the question of burden of proof. The findings to which appellants object are not found in the decree itself, but in the opinion filed by the judge and which was ordered filed but not to be recorded. In the decree, which we think determines the rights of the parties without reference to the reasons of the court, no finding is made as to the facts determined by the court. It is true that in the decree reference is made to the opinion, but any conflict between the opinion and the decree must be resolved in favor of the decree. This is the final order of the court and determines the rights of the parties. In other words, it is the final determination of the cause. As is held in 64 C. J., page 1272, section 1149:

"In case of doubt or ambiguity, findings or conclusions will be construed to uphold, rather than to defeat, the judgment; they are subject to a favorable and liberal construction in support of the judgment * * *."

Nor do we think that so-called findings embodied in an opinion are authoritative. See Lotz v. United Food Markets, 225 Iowa 1397, 283 N. W. 99, and cases cited; Harmon v. Hutchinson Ice Cream Co., 215 Iowa 1238, 247 N. W. 623; Van Gorden v. Schuller, 192 Iowa 853, 857, 185 N. W. 604, 606, and cases cited therein. We think the statement made by Justice Weaver in Baker v. Palmer, 192 Iowa 1321, 1323, 186 N. W. 419, 420, states in few words the correct rule:

"The trial court's judgment for the defendant generally involves a finding in his favor on all the issues, * * *."

■ Appellee argues that the finding of the court should have been in favor of the husband's survivorship. We do not consider it necessary to review this matter, as appellee's appeal is disposed of by our holding herein, and under the familiar rule relative to law actions tried to the court, the judgment and order of the court must necessarily have the effect of a verdict by a jury, and finding as we do that there was evidence to sustain it, we do not feel we should disturb it here.

The order permitting appeal and making provision therefor is challenged by appellee and the amount of the expense allowed therefor by the appellants. Under the circumstances of this case we are not disposed to interfere with the decision of the district court in this matter permitting final review by this court.

Appellee's motion to dismiss was submitted with the case, but we have felt that the matters involved would be better determined upon the issues, and therefore the motion to dismiss is overruled.

For the reasons heretofore given, our holding must be that the order and judgment of the district court awarding the property to the administrator of the husband's estate should be affirmed.—Affirmed.

HAMILTON, C. J., and STIGER, SAGER, BLISS, OLIVER, and MILLER, JJ., concur.