W. W. WILSON, Appellee, v. W. H. PRETTYMAN, Appellant.

**CONTRACTS:** Construction—By the Court. It is reversible error for
1   the court to permit the jury to pass upon the *intention* of a writing, even though it is in the form of a receipt for money paid, when the writing clearly expresses such intention. So held where the expressed intention was to release a party from ''further obligations relative to contract which has been mutually canceled.''

**EVIDENCE:** Parol as Affecting Writings—Finality of Unimpeached
2   Writing. The expressed *intention* of a party, as clearly embodied in his written undertaking, is final, unless impeached for fraud.

**RELEASE:** Requisites and Validity—Oral and Written. There may
3   be a valid oral and written release as to the same subject-matter.

**SEDUCTION:** Evidence—Sufficiency. Evidence held sufficient to support
4   a finding by the jury that defendant's wooing of plaintiff was solely for the purpose of seducing her.

**WITNESSES:** Impeachment — One's Own Witness. Principle reaffirmed
5   that a party vouches for the truthfulness of the witnesses called by him.

**PLEADING:** Issues, Proof, and Variance—Nonpaper Issue. Parties
6   may, by their conduct, tacitly concede the existence of an issue which has not been actually raised by proper pleading.

**EVIDENCE:** Documentary—Decree Without Entire Record. A duly
authenticated decree of divorce is admissible in evidence though not
accompanied by the entire record.

*Appeal from Carroll District. Court.*—E. G. ALBERT, Judge.

MARCH 13, 1923.

ACTION at law in two counts, one for breach of promise to
marry and one for seduction.—*Reversed and remanded.*

*Salinger, Reynolds, Myers & Cooney,* for appellant.

*McCrary & Urbany* and *P. W. Harding,* for appellee.

ARTHUR, J.—I. In Count 1 of her petition, plaintiff al-
leged that defendant began to pay attention to her in February,
1919, and soon after solicited marriage, and that there was an
oral agreement of marriage, with performance fixed about the
1st of September, 1919; that, about two weeks after the engage-
ment, and in August, 1919, defendant broke the contract, and
married another woman, for which breach plaintiff demanded
$25,000.

In Count 2 of her petition, plaintiff alleged that she was
an unmarried woman of previously chaste character; that,
in February, 1919, defendant promised to marry her; that "she
accepted his love and agreed to marry him;" and that, under
such relation, defendant "maliciously and purposely, by his
art of flattery and statements that their condition was the same
as man and wife, and through flattery and persuasion and soli-
citations and fake promise of marriage, overcame her resistance,
and seduced, debauched, and carnally knew plaintiff," for
which she demanded judgment in the amount of $25,000.

Answering Count 1 of plaintiff's petition, defendant ad-
mitted that, during the month of May, 1919, he kept company
with plaintiff, and that, as a result of such acquaintance, a "ten-
tative engagement to marry was entered into between plaintiff
and defendant, upon the condition that the children of said de-
fendant should not object to said proposed marriage;" that
thereafter the children of defendant did object to said proposed

marriage; that defendant did so inform plaintiff; that thereafter, and on or about the 5th day of August, 1919, said engagement was canceled by mutual consent of the plaintiff and defendant; and that thereafter, on or about August 11, 1919, defendant did pay to plaintiff the sum of $195, which was accepted by plaintiff as full accord and satisfaction, and in settlement of all matters between them.

Further specially answering Count 1 of petition, defendant alleged, as a separate and complete defense, that, on or about the 11th of August, 1919, plaintiff executed and delivered to him the following writing:

"Received from W. H. Prettyman $195.00 for reimbursement in preparations to marry said party. And in consideration of said amount I hereby release said party from any further obligations relative to contract which has been mutually canceled.

"[Signed]    Wilda W. Wilson"

Further specially answering Count 1, the defendant alleged, as a separate and complete defense thereto, that, on the 3d day of July, 1907, plaintiff was duly married to Gerard W. Classen, of Guthrie Center, Iowa.

Specially answering Count 2, defendant alleged, as a separate and complete defense, this marriage to Gerard W. Classen.

In avoidance of the oral release alleged by defendant, plaintiff, in a reply, averred that such release, if there were one, was obtained from plaintiff by false representations made by defendant to plaintiff that his children objected to his marrying plaintiff, with the hidden and ulterior purpose on the part of defendant to obtain plaintiff's release of the engagement to marry, so that defendant would be free to marry another woman; that plaintiff did not know and was not informed by defendant of the true facts; that she believed and relied upon the statements made to her by the defendant; that, had she known that defendant's children did not object to his marriage with plaintiff, and that his purpose and design were to marry another woman, she would not have consented to releasing him from the marriage contract; that the statements and representations made by defendant that his children objected to the marriage were false, and known by defendant to be false.

With respect to the written release above set forth, plaintiff

replied that "said writing was not intended to release any claim for damages accruing to plaintiff for breach of promise to marry her; or on account of her seduction, and it was so understood at the time the same was signed; that the amount specified in said writing was paid to and received by plaintiff only as payment for expenses incurred by her in a trip taken at the request and by the direction of the said defendant; that there was no consideration for a release or settlement of her claim for damages for breach of promise to marry or for her seduction;" and that the oral and written releases claimed by defendant were of no force, effect, or validity, because obtained by fraud and deceit practiced upon her by false statements, pretensions, and conduct of the defendant by himself and through one Browning, who, plaintiff alleged, was the attorney for defendant, and was acting for defendant with respect to the written release.

Such were the issues made by the pleading on which the case was tried. The jury returned a verdict in favor of plaintiff for $14,805, $7,500 in a separate finding being damages for seduction, and the balance for breach of promise of marriage. By a remittitur, under order of the court, the verdict was reduced 50 per cent, and as thus reduced, judgment was entered on the verdict, from which this appeal is taken.

II. As we understand counsel for defendant, they do not contend that there was no case to go to the jury on either cause of action. Broadly speaking, their complaint as to the breach of promise issue is that there were certain errors in the instructions submitting this cause of action to the jury. As to the cause of action based on seduction, complaint is made and errors assigned that there was no sufficient evidence of what the instructions required as a basis for the verdict.

III. Appellant complains that there was error in instructing as to the legal effect of Exhibit 4, the writing above quoted, which was claimed by defendant to be a written release of the

1. CONTRACTS: construction: by the court.

marriage engagement and of all claims of plaintiff against defendant based on breach of promise of marriage. Defendant takes the position that there was nothing ambiguous about the writing Exhibit 4, and that by its clear and plain terms it was a settlement and release of the contract of marriage. It appears from the plain-

tiff's own testimony that she not only signed Exhibit 4, but that she helped to draw it, and that she wrote it herself. After admitting the execution of the instrument, plaintiff sought to avoid it by claiming that she was induced to execute it by false representations made to her by defendant, which she believed and relied upon. We think that certainly the instrument may be regarded as a complete defense to plaintiff's action based on breach of promise, unless legal avoidance was established by the evidence. Now, did the court present to the jury the proper and legal effect of the instrument, in instructions to the jury?

Instruction 5, dealing with Exhibit 4, was as follows:

"The Exhibit 4 in evidence before you, which is claimed to be a written release signed by the plaintiff, is of no moment or consideration for you, if you find that the plaintiff did, with a knowledge of all the facts, voluntarily release the said Prettyman, at the conversation which took place between plaintiff and defendant on or about the 30th of July, 1919. If you find, however, that the plaintiff did not release the defendant at about that date, then you will consider this writing, Exhibit 4, and determine from all the facts and circumstances surrounding the making of the same, as shown by the evidence, whether or not it was the intention of the parties, in the making of said writing, to release the defendant, Prettyman, from any and all damages arising from his failure to carry out the marriage contract; and if it were plaintiff's intention so to do in making the said writing, then she cannot recover on Count 1 herein. But if it were not so intended, then Exhibit 4 would not bar the plaintiff from recovering herein."

The written release recited that the contract had been canceled, and that the defendant was released from "any further obligations relative to contract, which has been mutually canceled." The oral and written releases were pleaded as separate and distinct defenses. It seems to us that it was error to submit to the jury, as the above instruction did, whether, in the execution of Exhibit 4, it was the intention of the parties to release defendant from any and all damages arising from his failure to carry out the marriage contract. Manifestly, the intention with which Exhibit 4 was executed was aptly and fully expressed in the writing itself. We see no occasion for an instruction as to

intention at all. In the latter part of the instruction, it will be observed that the court told the jury:

"If it was plaintiff's intention so to do [to release Pretty-man from all damages arising from his failure to carry out the marriage contract], in making the said writing, then she cannot recover on Count 1 herein. But if it was not so intended, then Exhibit 4 would not bar the plaintiff from recovering herein."

As before stated, we think that the intention was not a proper subject of instruction at all; but if it were, the validity of the writing should not depend upon the intention of only one of the parties to the writing. Nowhere in the instructions did the court tell the jury that the oral release or the written release, either of them, was an effectual release, unless avoided because plaintiff was induced to make a release by fraudulent representations. Plaintiff admitted the execution of Exhibit 4, the written release, and the exhibit itself showed that it was, in terms, a complete release; and the burden was on the plaintiff to avoid it. When the case was ready for charge to the jury, there was the above mentioned status as to the written release, alleged by defendant in his answer. But the court, in his instructions, in terms and by implication, still placed the burden on defendant to establish an effectual release. The alleged oral release, if established, and especially the written release, were, in our judgment, sufficient and effectual to exonerate defendant

2. EVIDENCE: parol as affecting writings: finality of unimpeached writing.

from his marriage engagement, unless and until set aside and avoided because plaintiff was induced to make them through fraud and deceit, as claimed by her; and we think that the court should have so instructed, and placed the burden squarely on plaintiff of proving her allegations of fraud. It is true that defendant, having admitted the marriage engagement, was required to prove a release from such engagement. We think that had been done, if not by the oral release, then by the written release, when the court came to instruct the jury. The instructions given, we think, may have had the effect of creating some doubt in the minds of the jury whether plaintiff had given any sort of a release. We think the court failed to give Exhibit 4, the written release, the legal effect apparent on its face. Such release was apparently complete and effective, and it was plac-

ing an unwarranted burden on defendant to require him, as Instruction 5 did, to establish the validity and effect of it by evidence other than the release itself. The court said to the jury that Exhibit 4 was *claimed* to be a written release, when we think it had been established by the writing itself, *prima facie*, that it was an effective release. Also, said instruction makes the intention of the plaintiff the test of the effect of the release. This was an unfair burden placed on defendant. Exhibit 4 did not depend for effect upon anything but itself. It was good. It was sufficient, in and of itself, to establish a full and complete release, if it came to be considered under the instructions, unless its prima-facie effect was destroyed and avoided because it was procured by fraud.

We think it was error for the court to submit to the jury whether or not Exhibit 4 was intended to be complete, when, at that time, the execution had been established and admitted. We think the court should have said to the jury that Exhibit 4 was a complete defense to the breach of promise cause of action, unless avoidance based on fraud were proved. We think that the charge to the jury as a whole placed an undue burden on the defendant, especially respecting Exhibit 4, and failed to specify, as it should, that Exhibit 4 was a good defense, unless plaintiff succeeded in destroying it by a preponderance of the evidence in support of her claimed fraud in avoidance thereof.

We think that the same observation is warranted with respect to the oral release. The oral and written releases were distinct defenses, and should have been so treated in the submission of the case to the jury, except that, if the oral release were found to be established, the written release should not be considered as a release. We think that the instructions had the effect to minimize the defenses, and also that, on the whole, burdens were placed upon the defendant which he should not have borne, and which had a prejudicial effect upon his defenses. For the reasons above pointed out, it was error to refuse a new trial of the breach of promise of marriage cause of action.

IV. The court instructed that plaintiff could not recover on her cause of action for seduction unless the jury found that defendant's *sole* purpose in paying attention to plaintiff and

protesting love and affection for her was to obtain sexual inter-
course with her.   Defendant's claim is that the
verdict for seduction was contrary to the in-
structions, and that the verdict was reached only
by disregarding the instructions.   Instruction 15 reads:

4. SEDUCTION:
   evidence:
   sufficiency.

"If you find that the defendant, by the visits and attention
he gave the plaintiff, and by protestations of love and affection,
he gained her affections, confidence, and love, and that his sole
purpose in so doing was to obtain sexual intercourse with her,
and through her affections, confidence, and love thus obtained,
she yielded and permitted him to have sexual intercourse with
her, this is seduction, within the meaning of her claim."

Defendant's specific claim is that there was no evidence
that defendant's *sole* purpose in the visits and attentions given
plaintiff was to obtain sexual intercourse.   We need not be con-
cerned as to whether sexual intercourse took place or not.   We
are not triers of the facts.   The question presented at this point,
under the errors assigned, is whether the evidence is sufficient
to sustain a finding authorized by the instruction: that is, that
the courtship paid plaintiff by defendant and his promise of
marriage were for the *sole* purpose of accomplishing sexual in-
tercourse.

A brief statement of salient features of the claims and
testimony of the parties may be helpful at this point.

Plaintiff's claim in her testimony is that she and defendant
became acquainted in February, began courtship about the mid-
dle of April, and became engaged on May 1st, and about two
weeks thereafter indulged in an intercourse which she claims
constituted seduction.   The record shows the courtship to be,
except for sexual intercourse claimed by plaintiff, about like
that which usually takes place with people of their ages.   (He
was about 60 and she about 36.)   She says that, "because of
his promise of marriage and flattery and solicitation," she
yielded to intercourse.

On the 30th of July, defendant told plaintiff that his chil-
dren were objecting to his marrying her.   It was established,
and the court so instructed, that they did so object.   And it is
established by the evidence that plaintiff knew of these objec-
tions all the time, and feared that they might prevent the mar-

riage. She had expressed repugnance to marrying where dissensions would result. She had said that she would not have considered plaintiff's offer of marriage if it would bring trouble into his home. When defendant asked for release, on the ground stated by him that his children objected to the marriage, he claims that she gave an oral release, and afterwards a release in writing. She claims that she would not have released defendant from his marriage agreement, except in hope that the children might relent, and especially that she was induced to make the release because the defendant concealed from her that he then intended to marry another woman. Plaintiff's charge is that defendant, having this purpose to marry another woman, merely used the objections of the children to induce her to release him, and that he sought such release, not merely to satisfy the children's objection to plaintiff, but to be free to marry another woman. Both plaintiff and defendant were living at Coon Rapids on July 30th, the date of the claimed oral release. On the 10th of August, defendant was married, at Cheyenne, Wyoming, to a woman who was then a resident of Coon Rapids, on a visit at Cheyenne. Defendant had, on the first of July, 1919, met for the first time the woman whom he married, and his attentions to her consisted of having been at church with her and having taken her for a drive. Plaintiff called defendant to testify as her witness, and he testified that on July 30th, the date of the claimed oral release, he had no purpose to marry his present wife; that there was no engagement between them, nor one thought of, until he arrived in Cheyenne on August 10th; and that their marriage on that day was in pursuance of an engagement made on that day. Defendant testified, in substance, that he paid court to plaintiff in good faith; that he came to love her and engaged to marry her, hoping and expecting at the time to overcome the objections of his children to his marriage with plaintiff; that his only reason for asking release from plaintiff from their engagement was that his children continued to object to his marriage, and would not relent; and that he had no purpose or intention, at the time he asked for release, of marrying the woman who is his present wife.

The court instructed the jury, properly and correctly, that plaintiff, having made defendant her witness, vouched for the

credibility and truthfulness of the witness, and that she might

5. WITNESSES: impeachment: one's own witness. not claim him to be unworthy of belief. Of course, calling defendant as her witness did not preclude plaintiff from calling other witnesses

to contradict him, but no one did contradict him. The jury might disregard the testimony of defendant on this matter, if there was any evidence or circumstance tending to show, or from which fair inference might be drawn, that defendant was mistaken in that about which he spoke. It scarcely seems that defendant would be honestly mistaken about when he formed the purpose to marry his present wife, and when he became engaged to marry her. He may have testified falsely about it; but that, under the instruction, was the one thing that plaintiff, by calling him as her witness, might not claim.

Counsel for plaintiff argue that it is significant that defendant left Carroll on August 9th, and that, before starting, he telegraphed his present wife of his coming to Cheyenne. Counsel urge that defendant must have known of the plans of the woman he married, and that he must have purposed and planned to marry her, at the time he sought release of his marriage engagement from the plaintiff. It is insisted by counsel that such facts and circumstances warranted a finding by the jury that defendant sought release from his engagement of marriage with plaintiff for the concealed purpose of marrying his present wife; and that such concealed purpose goes to show that his courtship, protestations of love and affection, and engagement with plaintiff were all for the sole purpose of gaining her confidence and mastery over her, to accomplish sexual intercourse with her.

While it seems to us that the verdict for damages for seduction, under the instruction given, which correctly stated the law, had little, if any, support in the evidence, we are not prepared to say, and do not hold, that the evidence was insufficient to support a verdict. After consideration of the whole record, we cannot better express our views than by adverting to the language of the trial court in ruling on the motion for a new trial. The court said:

"I never have been satisfied with the verdict in this case, and I am unable to understand, even with my experience on the

bench, why a verdict of this amount should be returned, nor upon just what the verdict was based. If this plaintiff had been a young and inexperienced girl, and a verdict of this kind had been returned in her favor, I should be disposed to leave it stand; but in view of the age of this woman, the fact that she was a married woman for eight years, and since that time has been somewhat in touch with the business world, and therefore ought to understand the ways of the world, and the speed with which this seduction was accomplished, and the brevity of the courtship leading up to it, all lead me to the conclusion that this verdict is excessive."

Then the court directed remittitur of 50 per cent of the verdict, which remittitur was made.

V. Defendant pleaded as special defenses to Counts 1 and 2 of plaintiff's petition that plaintiff was, on July 3, 1907, married to Gerard W. Classen, at Guthrie Center, Iowa. In her reply, plaintiff did not allege that she had been

6. PLEADING: issues, proof, and variance: nonpaper issue.

divorced from Classen. Counsel for defendant urges that it was necessary for plaintiff to plead the divorce from Classen, in order to lay the foundation for introduction of evidence to prove such divorce, and that, in the absence of any such allegation in her reply, evidence of a divorce should not have been received. We think that good pleading required that defendant's allegation of plaintiff's marriage, which would be presumed to exist until divorce was shown, be traversed by plaintiff's alleging divorce from Classen. However, in view of the introduction in evidence by plaintiff of the decree of divorce from Classen, and the correct ruling of the court that it was admissible, the state of the pleadings in that particular became immaterial.

Plaintiff offered in evidence a decree of divorce rendered in the Oklahoma district court. Defendant objected to the transcript of the record, on the ground that it was not properly authenticated. This objection was without merit. The decree was signed by the trial court, and was certified by the clerk of said court, with his seal affixed. The presiding judge certified that the clerk making the certificate to the record was the clerk of said court, and that the certificate was in due form of law and made by the proper officer, and the clerk again certified that

the judge whose name was subscribed to the foregoing certificate was, at the date of making the certificate, the presiding judge of said district court, and that his signature was genuine. It was conceded by defendant that the plaintiff is the person mentioned as defendant in the decree. The ground of divorce, as shown by the recitation of the decree, was for "gross neglect of duty." Plaintiff introduced in evidence laws of Oklahoma in force, at the date of the decree, showing that "gross neglect of duty" was a ground of divorce in Oklahoma at the time the divorce was granted.

Counsel for defendant urge that the decree was not admissible in evidence without being accompanied by the entire record. Under our holding in *Alexander v. Grand Lodge A. O. U. W.*, 119 Iowa 519, this objection would not exclude the decree. On the strength of the decree, the court instructed the jury that a divorce had been granted to plaintiff, and that she was an unmarried woman. The instruction was without error.

7. EVIDENCE: documentary: decree without entire record.

VI. We have carefully examined the record with reference to all of the assignments of error. We find no error in the admission of evidence, and we find no error in the instructions given by the court, except in respect to the instructions regarding the legal effect of the releases.

We have said that there was error prejudicial to defendant in the submission of the breach of promise cause of action. We cannot help feeling that such error caused some prejudice against defendant, and in some degree prevented defendant from having a fair trial on the seduction charge. Considering the whole record, we are constrained to believe that the verdict as to seduction, as reduced, is still excessive, and that passion and prejudice must have obtained, and influenced the jury in arriving at the verdict; and for that reason the verdict as to seduction and the judgment entered thereon must be reversed.

For the reasons above stated, the entire judgment is reversed and the case is remanded.—*Reversed and remanded.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.