LAWTON SAVINGS BANK, Appellee, v. HANS BREMER et al., Appellees; ANDREW MOYSE, Appellant.

FEBRUARY 14, 1928.

*Griffin, Griffin, & Griffin,* for appellant.

*A. G. Hess,* for Lawton Savings Bank, appellee.

WAGNER, J.—On July 9, 1926, the appellee bank obtained a judgment against the defendant John Moyse in the sum of $8,828.21 and costs, upon which there has been credited the sum of $6,500. The defendant Hans Bremer owns and operates an elevator at Lawton, and in December, 1926, he purchased from John Moyse, the judgment debtor, a quantity of corn, the purchase price of same amounting to $785.40. The appellee bank garnished the defendant Hans Bremer for the proceeds of the sale of said corn; the appellant Andrew Moyse, son of John Moyse, made claim for the selling price of said corn.

This action is in equity, and was originally begun by the appellee bank against Hans Bremer, and in the petition it asks that the purchase price of said corn be subjected to the payment of the aforesaid judgment. Bremer made affidavit that John Moyse had sold him the corn, and that it had been delivered, and that, about the time he was garnished, he received word to make the check for the purchase price of the corn to the appellant Andrew Moyse; and he asked that both John Moyse and Andrew Moyse be impleaded in this case; and the court ordered that the father and son, to wit, John Moyse and Andrew Moyse, be required to appear in said action and maintain or relinquish any claim they might have to said fund. Thereupon, Bremer paid the purchase price of the corn to the clerk of the court, and asked that the court determine the ownership of same. John Moyse appeared, and in his answer averred that his son, Andrew Moyse, was the owner of the corn, and entitled to the proceeds of the sale. Andrew Moyse appeared, and in his answer alleged that he was the owner, and entitled to the fund, and that he raised said corn as the tenant of his father, John Moyse.

The appellee bank, in its reply to the answer of John Moyse, averred, in substance, that he was the owner of the corn, and that said John Moyse is attempting to defeat appellee's claim and perpetrate a fraud upon his creditors by attempting to make it appear that the corn belonged to Andrew Moyse. In its reply to the answer of Andrew Moyse, the appellee denied the averments of said answer, and alleged that John Moyse and Andrew Moyse conspired together to defeat appellee, and that they are attempting to conceal the true ownership of said corn and keep the proceeds thereof from being subjected to appellee's judgment against John Moyse.

Upon the issues thus joined, trial was had, and the court rendered decree, finding that the corn in question was the property of John Moyse, and subjected the purchase price thereof, in the amount as aforesaid, to the payment of appellee's judgment, and rendered judgment against the defendants John Moyse and Andrew Moyse for the costs. From this decretal action by the trial court the defendant Andrew Moyse has appealed.

The question in the case is, Was John Moyse or his son, Andrew Moyse, the owner of the corn which was sold to Hans

Bremer? The determination of this question of fact must depend upon the evidence in the case. John Moyse was the owner of a farm consisting of about 64 acres, upon which the corn was raised. It appears that, on July 9, 1926, the time of the trial of the case in which judgment for $8,828.21 was obtained against him, he testified that, the spring before, by written lease, he rented the farm to his son for that year, for "right around $600," which rent had not been paid. In the trial of the instant case, the appellee called John Moyse as a witness, and he was asked as to whether he did not testify at the former trial as hereinbefore set out, and he either equivocated or denied that he had so testified, and he gave testimony to the effect that there was an oral lease between him and his son, and that the rental was $450; that, on July 10, 1926, he received from his son $426.50, being a check from the Frank E. Scott Commission Company, payable to and indorsed by the son; and that the remainder of the rent was paid in cash.

The appellee then called the court reporter who acted as such at the time of the former trial, who gave testimony relative to his statements which were inconsistent with his statements at the trial of the instant case. The appellant objected to the testimony of the court reporter, upon the ground that it was incompetent, irrelevant, and immaterial, and, if offered for the purpose of impeachment, as being an attempt to impeach his own witness. In 40 Cyc. 2561, it is said:

"A party who calls his adversary as a witness is not allowed to impeach him, but he may draw any inference from his testimony which the facts stated by the witness seem to justify."

In *Harvey v. Phillips*, 193 Iowa 231, we said:

"By placing the defendants on the stand as witnesses, to a certain extent he [the plaintiff] vouches for their truthfulness, and he may not impeach them, although, of course, he may contradict, and may rely upon the proper inferences to be drawn from the circumstances testified to by them."

As supporting the same principle, see *Farmers L. & Tr. Co. v. Scheetz*, 196 Iowa 692; *Wilson v. Prettyman*, 195 Iowa 598; *Bihlmeier v. Budzine*, 201 Iowa 398. In the latter case, we said:

"He [Budzine] testifies squarely that it was all his mother's money and property at all times. The appellee, having tendered him to the court as a witness, vouched for his competency, credi-

bility, and truthfulness. Of course, appellee was entitled to the benefit of any conflict, inconsistency, or incongruity which might be found in Budzine's testimony, and he was not precluded from calling other witnesses to contradict Budzine, if said witnesses could be produced * * * ."

We are of the opinion that the testimony of the court reporter was only impeaching in character, and was an attempt on the part of the plaintiff to impeach the testimony of the witness called by himself, which is not allowable, under the rule of the law announced in the foregoing cases. However, the appellee is not bound by the testimony of any one witness. The testimony of John Moyse is contradicted by other testimony and by the facts and circumstances shown upon the trial. Some of the other evidence will be referred to. The $426.50 check claimed by the defendants Moyse to have been given in payment of rent represented the selling price of hogs. Andrew Moyse was the payee therein, and it bears his indorsement in blank upon the back. It does not bear the indorsement of the defendant John Moyse. It also bears the indorsement of D. G. Manley, who, John Moyse claims, took the check to the bank, and got the money, and delivered the cash to him. The check was paid through the Sioux City clearing house on July 14, 1926. Andrew Moyse was 23 years of age, unmarried, and residing with his father as a member of his family. If John Moyse rented the farm to his son, Andrew knew about it, and the corn was Andrew's, and was not subject to sale by the father. Hans Bremer testified that, about the 16th or 18th of December, he had a talk with John Moyse about buying some corn at his elevator; that John Moyse said he wanted to sell some corn, about 1,200 bushels; and that he bought it.

On July 12, 1926, immediately after the former trial wherein the aforesaid judgment was rendered, at which trial John Moyse gave testimony as testified to by the court reporter, an execution was issued on the judgment, and placed in the hands of the sheriff, and that officer was directed, in writing, to garnish Andrew Moyse and take his answers; and J. D. Beardsley, a student in the State University of Iowa at the time of the last trial, but a deputy sheriff at the time of the issuance of the execution, proceeded, as directed, to serve the writ and garnish Andrew Moyse. At the time when Beardsley called upon An-

drew Moyse, he found Andrew plowing corn for one of the neighbors. Beardsley testified as follows:

"There was no one with him. A. G. Hess took me out there in his car when I served the garnishment, and I explained fully the nature of the questions and answers, and asked him if he owed his father any rent for the land he was renting from him. A. G. Hess told me also to inquire if he was renting any land from John Moyse, and if so, how much; and I asked him, and he said he was not renting, but only working the place for his father. I asked him if there was any agreement regarding rent or lease in any form, and he answered that there was not. I made it known to him that I referred to the home place. He also said the certain horses, cattle, and hogs referred to in this notice of garnishment was the property of his father, and in his possession while he was working the land for his father."

This conversation is denied by Andrew Moyse, as a witness for himself. He testified that he told Beardsley that he did not have any written lease, but that there was an agreement to pay cash rent, and that he did not tell Beardsley that he was just working for his father.

While there is other testimony, yet to set it out more fully would unduly extend the length of this opinion. The trial court found for the appellee. We are disposed to agree with that finding. We recognize the rule of law that testimony of oral statements or admissions (such as testified to by the former deputy sheriff) should be received with great caution. The value of such testimony depends much upon the age, intelligence, and honesty of the witness and the circumstances under which they were made, and all other facts and circumstances appearing from the evidence that throw light upon its weight and credibility. The former deputy sheriff appears to be intelligent, and there is no inducement for him to misrepresent; and the circumstances under which the declarations were made were such as to impress the same upon his memory.

The testimony of Beardsley was introduced by appellee. If Andrew Moyse had rented the farm from John Moyse prior to this conversation, he knew it at that time, and yet Beardsley unreservedly testifies as aforesaid. Moreover, if John Moyse had rented the farm to Andrew Moyse in the spring of 1926, he had no corn raised on that farm to sell, at the time when he

sold the corn to Bremer in December, 1926. Bremer and Beardsley are disinterested witnesses.

From a careful perusal of the entire record, and after consideration of only the competent testimony, we are abidingly satisfied that the $785.40 in the hands of the clerk is the sale price of corn belonging to the defendant John Moyse. Therefore, the decree of the trial court is correct, and it is affirmed.— *Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.