# CHESHIRE,

## DECEMBER TERM, A. D. 1859.

### ROBINSON v. HOLT.

39 557
67 535
39 557
d69 534,
39 557
72 570

By the statute of 13 Elizabeth, chapter 5, made perpetual by 29 Elizabeth, chapter 5, and adopted as part of the common law in this State, all conveyances made to delay, hinder or defraud creditors, are fraudulent and void as to those creditors.

He who purchases or takes a mortgage of property, with knowledge of a fraudulent design of the vendor or mortgagor, thereby to defeat or delay his creditors, is in law charged with a participation in the fraud, although he may pay a full consideration and take immediate possession. The transaction is *mala fide*, and the conveyance or mortgage to him is utterly void and of no effect as to creditors.

When one permits his goods to be so intermingled with those of a debtor that an officer, having a writ or execution against such debtor, after making reasonable inquiry and effort, is unable to distinguish the one from the other, and he does not himself identify and point them out, the officer is justified in taking and selling the whole as the property of the debtor.

If goods of several intermingled can be easily distinguished and separated, or if they are of the same nature and value, so that a division of equal proportionate value can be made, although incapable of an actual separation by the identification of each particular, each may lay claim to his own or to an aliquot part; but if the mixture is undistinguishable, and a new ingredient is formed, not capable of a just appreciation and division according to the original rights of each, or the articles mixed are of different values or quantities and the original values or quantities cannot be distinguished, the party who occasions, or through whose fault or neglect occurs the wrongful mixture, must bear the whole loss.

TROVER, for five tons of hay. Writ dated February 4, 1858.

It appeared that one Daniel Merriam, who was a son-in-law of the plaintiff, on the 11th day of March, 1857, exe-

VOL. XXXIX.          36

cuted a mortgage to the plaintiff of his stock of some twenty cattle, and horses, harnesses, carriage, sugaring materials, and a quantity of hay, then being in the barns on the premises of Merriam, in Walpole, about ten miles from Keene village, and that said mortgage was duly recorded on the same day. The evidence tended to show that the note, to secure which the mortgage was given, was dated the same day as the mortgage, but was given upon an adjustment of an existing valid debt; and also, that prior to the execution of the mortgage, the defendant, as deputy-sheriff, had two writs of mesne process put into his hands against Merriam, founded on valid debts, due from Merriam to the creditors who were plaintiffs in said writs; that the defendant started from Keene, where he lived, to go to Merriam's house to attach property on said writs, and while on the way met Merriam and made known to him his business, and that Merriam persuaded the defendant to return to Keene with him, with a promise that he would procure the money of the plaintiff, or get the plaintiff to sign a note with him, on which the money might be raised, and that these claims should be immediately paid; that thereupon they returned to Keene; that the defendant notified the plaintiff of his having the two writs in his hands for service against Merriam; that the plaintiff and Merriam then had a private interview, after which Merriam procured this mortgage to be made out, which was executed and sent by express to the town-clerk of Walpole for record, after which the defendant was notified by Merriam of the existence of said mortgage, and that no arrangement of said suits would be made. The evidence also tended to show that the plaintiff knew the fact of Merriam's owing some other debts in the neighborhood at the time; that prior to said mortgage Merriam had the possession of all the mortgaged property, and that after the mortgage the same was left in Merriam's possession and under his control, and that it so remained and

continued, without any interference of the plaintiff; that some of the hay was kept over the summer after the date of the mortgage, and was called "old hay." The plaintiff's evidence tended to show that this old hay was in barn No. 1, on Merriam's premises, but the defendant's evidence tended to show that it was in some of the other barns, and not in No. 1. The evidence also tended to show that, in the haying season of that year, Merriam so mixed this old hay with the new hay, by pitching it over with the other hay and covering it with new hay, that it could not readily be distinguished or separated from the other hay; that the defendant had notice of the existence of this mortgage on the day of its date, and also on the 12th day of August, when he went to the town-clerk's office in Walpole and saw the record of the same mortgage, and that he had seen the same once before during the summer; that on said 12th day of August he left copies of certain writs against Merriam at said office, attaching all Merriam's hay in said barn No. 1, and afterwards, on the same day, visited said barn and saw Merriam, and on inquiry was told by Merriam that there was no old hay in said barn; that said actions were duly entered in court, and judgment rendered and execution issued thereon; that in October, being within thirty days after judgment, the defendant levied said executions on all the hay in said barn No. 1, and duly advertised it for sale, and on the 24th of December following sold it, and applied the proceeds on said executions; and that on said day, and before the sale, he inquired again of Merriam, and was told that there was no old hay in that barn.

It appeared that the plaintiff and the defendant both lived in Keene village, and were and had been acquainted with each other, and the evidence tended to show that the defendant never notified the plaintiff that he had attached the hay in said barn, or levied thereon, otherwise than by leaving his copy and return with the town-clerk when he

made the attachment, and by duly advertising the sale on execution, and that he never requested the plaintiff to point out any portion which he might claim, or separate it from the rest, or take it away, and that the plaintiff never had any personal knowledge until after the hay was sold as aforesaid and removed from the barn, that the same had been attached or levied on by the defendant; nor did the defendant know that the plaintiff had any hay, or any claim upon any in said barn, and had never been notified by the plaintiff that he made any claim on any hay in that barn, or offered to separate his hay from the other, or remove it, or ever made any demand on the defendant for said hay.

The court submitted to the jury the following questions, by consent of the parties: (1.) Was all the hay sold by the defendant, on the 24th day of December, 1857, new hay? (2.) Was it the intention and purpose of Merriam, when he gave the mortgage to the plaintiff, March 11, 1857, thereby to put his property in such a position as to defraud, hinder, or delay his creditors, and was that fact known to the plaintiff when he took the mortgage? (3.) Did the plaintiff allow the hay mortgaged to him by Merriam to be so mixed with Merriam's other hay that the defendant, upon making reasonable inquiry, was not able to distinguish it from the other, and did the defendant make such reasonable inquiry to ascertain the plaintiff's hay, before he sold it?

Upon the first question the jury disagreed, but they answered both the other questions fully in the affirmative; whereupon the court ordered a verdict for the defendant, to which the plaintiff excepted, and, judgment being rendered on the verdict, the plaintiff filed this bill of exceptions, which was allowed by the court.

*Lane*, for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

Robinson v. Holt.

FOWLER, J. By the statute of 13 Elizabeth, chapter 5, made perpetual by 29 Elizabeth, chapter 5, and adopted as part of the common law in this State, "for avoiding feigned, covenous and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments and executions, as well of lands, tenements and hereditaments, as of goods, chattels, wares and merchandize, which feoffments, &c., have been devised of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, &c., not only to the let or hindrance of the due course and execution of law and justice, but also to the overthrow of all true and plain dealing," &c., it was declared and enacted in the second section, "that all and every feoffment, gift, grant, alienation and conveyance, and all and every bond, suit, judgment and execution, to or for any intent or purpose before declared and expressed, shall be from henceforth deemed and taken," as against such creditors and others, and their representatives, "to be utterly void and of none effect." The act contained a proviso in the sixth section, excepting from its operation transactions upon a good consideration and *bona fide.*

The finding of the jury in the present case, that it was the intention of the debtor, when he gave the plaintiff his mortgage, thereby to put his property in such a position as to defraud, hinder or delay his creditors, and that this intention was known to the plaintiff when he took the mortgage, brings the conveyance under which the plaintiff claims to recover within the express prohibition of the statute, and excludes the plaintiff from all benefit of the proviso thereto, in accordance with repeated decisions of our own courts, since he who purchases or takes a mortgage of property, with knowledge of the fraudulent design of the vendor or mortgagor thereby to defeat, hinder or delay his creditors, is, in law, charged with a participa-

tion in the fraud, although he may pay a full consideration, and take immediate and open possession. When the purchaser or mortgagee makes the purchase or takes the mortgage, with knowledge of such fraudulent intent on the part of the vendor or mortgagor, the transaction cannot be said to be *bona fide*, however full and valuable the consideration may be. *Twyne's Case*, 3 Coke 80, and authorities; S. C. 1 Smith L. C. 35–80, where the principal authorities, English and American, are collected; *Coburn* v. *Pickering*, 3 N. H. 315; *Parker* v. *Patten*, 4 N. H. 176; *Trask* v. *Bowers*, 4 N. H. 309; *Smith* v. *Lovell*, 6 N. H. 67; *Paul* v. *Crooker*, 8 N. H. 288; *French* v. *Hall*, 9 N. H. 137; *Page* v. *Carpenter*, 10 N. H. 77; *Clark* v. *Morse*, 10 N. H. 236; *North* v. *Crowell*, 11 N. H. 251; *Smith* v. *Smith*, 11 N. H. 459; *McConihe* v. *Sawyer*, 12 N. H. 396; *Blake* v. *White*, 13 N. H. 267; *Seavey* v. *Dearborn*, 19 N. H. 351; *Blodgett* v. *Webster*, 24 N. H. 91; *Kimball* v. *Thompson*, 4 Cush. 441; *Bridge* v. *Egglestone*, 14 Mass. 245.

The question, predicated upon the finding of the jury, that the plaintiff allowed the hay mortgaged to him to be so mixed with the hay of the debtor that the defendant, upon making reasonable inquiry, as he did, was unable to distinguish one from the other, is entirely superseded by holding the plaintiff's mortgage void under the finding of the jury upon the other branch of the case. Still, it seems to us entirely clear, that, had the plaintiff's mortgage been valid, the defendant did all he was bound to do under the circumstances, and would have been justified in selling the plaintiff's hay if any such had been intermingled with the debtor's. He permitted the hay mortgaged to him by the debtor to become so mixed with the hay of the debtor that the defendant, after making every reasonable inquiry and effort, was unable to distinguish what was the debtor's and what had been mortgaged to the plaintiff. The plaintiff gave no notice of his claim, and did not offer to identify or point out any portion of the hay as his own. The

intermingling was by the fault or neglect of the plaintiff in the first instance, and so intimate that upon diligent inquiry the defendant could not distinguish the hay of the plaintiff from that of the debtor. The plaintiff neglected to identify his property, and omitted even to give notice of any claim. A portion of the hay belonged to the debtor, and this the defendant had a right to attach and sell upon the writ and execution against him. With this hay the plaintiff had negligently and carelessly permitted his hay to become so intermingled as to be undistinguishable from it. On general principles, therefore, the mass of hay became the property of the debtor, as between the plaintiff and an officer attaching the same upon a writ and execution against that debtor.

The doctrine of the confusion of goods has been often discussed, and may be considered as clearly and distinctly settled. If the goods of several intermingled can be easily distinguished and separated, no change of property takes place, and each party may lay claim to his own. If the goods are of the same nature and value, although not capable of an actual separation by identifying each particular, if the portion of each owner is known, and a division can be made of equal proportionate value, as in the case of a mixture of corn, coffee, tea, wine, or other article of the same kind and quality, then each may claim his aliquot part; but if the mixture is undistinguishable, because a new ingredient is formed, not capable of a just appreciation and division according to the original rights of each, or if the articles mixed are of different values or quantities, and the original values or quantities cannot be determined, the party who occasions, or through whose fault or neglect occurs the wrongful mixture, must bear the whole loss. *Lupton* v. *White*, 15 Ves. 432; 2 Black. Com. 405; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 513; 1 Story Eq., secs. 468, 623; Story Ag., secs. 205, 333; 2 Kent Com. 364, 365; Story Bail., sec. 40; *Bond* v. *Ward*,

7 Mass. 123; *Shumway* v. *Rutter*, 8 Pick. 443; Dane Abr., ch. 76, art. 3, sec. 15; *Armory* v. *Delamirie*, 1 Str. 505; *Panton* v. *Panton*, cited 15 Ves. 439; *White* v. *Lady Lincoln*, 8 Ves. 363; *Chadworth* v. *Edwards*, 8 Ves. 46; *Newman* v. *Payne*, 2 Ves. Jr. 203; *Ryder* v. *Hathaway*, 21 Pick. 298; *Lewis* v. *Whittemore*, 5 N. H. 364; *Seavey* v. *Dearborn*, 19 N. H. 351; *Walcott* v. *Keith*, 22 N. H. 196; *Wilson* v. *Lane*, 33 N. H. 446; *Gilman* v. *Hill*, 36 N. H. 311.

As the plaintiff's mortgage was void from its inception, as against the creditor for whom the defendant acted, and, if it had not been, the plaintiff's hay was so intermingled with that of the debtor as to be undistinguishable from it, the exceptions taken to the verdict in the court below must be overruled, and the judgment rendered upon it affirmed.

*Exceptions overruled.*