In the Matter of the Estate of CHARLES L. MESEROLE, Deceased.

Surrogate's Court, New York County, April 2, 1928.

**Executors and administrators — next of kin — report of referee that objectants are not sole next of kin, is not sustained.**

Objections were filed to the account of a public administrator and are based on a claim by the objectants that they are the only surviving next of kin of the decedent.   The finding by the referee that the objectants are not the only surviving next of kin is not supported by the evidence.   It clearly appears that the objectants are next of kin of the decedent and negatively that the decedent has no other next of kin.

The census records, which may be relied upon, considered in connection with city directories, the death of decedent's mother, and the oral testimony established negatively that there were no other next of kin of the decedent at the time of his death.

APPLICATION for confirmation of report of referee designated to take testimony and report upon objections to account of public administrator.

*Sullivan & Cromwell,* for the administrator.

*N. Joseph Slicken,* for the petitioner.

*John H. Madden,* for the objectant.

*William J. O'Shea, Jr.,* special guardian.

*John F. Collins,* referee.

O'BRIEN, S.   This is an application for confirmation of the report of a referee designated to take testimony and report upon the objections filed to the account of the public administrator.   These objections were filed by Mary A. Griffith and James H. Mersereau, and were based upon the claim of said objectants that they were the only surviving next of kin of decedent.   A special guardian in this proceeding represented unknown next of kin.   In his account the public administrator set forth that the next of kin were not known.   After an exhaustive trial the referee found that the objectants were first cousins of decedent on his father's side and were decedent's only next of kin on that side entitled to share in the estate.   He found, on the other hand, that there was no proof that decedent was not survived by relatives on his mother's side of the

Surrogate's Court, New York County, April, 1928.      [Vol. 132

same or closer degree of kindred as Mrs. Griffith and James H. Mersereau. One of his conclusions of law was " That the efforts made by objectants to ascertain all decedent's next of kin were not sufficient to overcome the presumption that there are such next of kin of the same or closer degree of kindred as objectants; " and another, " That the objections filed by said two next of kin should be disallowed." It is conceded by all the parties to this proceeding that the report of the referee is fully supported by the evidence so far as his finding of fact that said two objectants are the only next of kin upon the father's side of decedent is concerned. The proof set forth all of the family connections of decedent's father and established the facts necessary for the conclusion that the objectants were the only surviving next of kin of that side. Decedent's father was Cornelius M. Mersereau, who died in New York in 1880. Decedent's mother's maiden name was Marie Louise Russell. She died in 1885 and was buried in the Mersereau family plot in Bethel Cemetery, Tottenville, S. I. She was a daughter of Joseph and Abigail Russell. After a careful examination of the record and exhibits and a perusal of the memoranda submitted I cannot bring myself into agreement with the referee with respect to the above-quoted conclusions. While it is true that the information produced concerning decedent's mother's family connections is for the most part negative in character and comparatively meagre, its weight and its importance is increased many times by the years that have intervened since the time referred to in said proofs. The direct evidence establishes that decedent's mother's maiden name was Marie Louise Russell; that she was the daughter of Abigail and Joseph Russell; that in 1830 said Abigail Russell was a widow with one child and that child female; that they lived at 196 Division street; that said Abigail Russell remained a widow for all the years during which her name was carried in the City Directory, viz., until 1850 when her name no longer appeared; that in 1850 in said directory the name of decedent's father appears with the description " ship carpenter " and an address of 85 Lewis street, the same address as was ascribed in said directory to Widow Russell for the years 1849–1850; that the census of 1850 showed " Cornes Messerau," a ship carpenter, twenty-five years old, " Mary Messerau," twenty years old, and " Chas. Messerau," eleven months old, to be living in the eleventh ward within which Lewis street was located; that the principal witness for objectant associated with decedent for twenty-six years could not recall that decedent had ever said whether she (decedent's mother) had any relatives; that James H. Mersereau, one of the objectants, testified that decedent's wife never told him anything about her family;

that Catherine Mersereau, wife of said James H., and William J. Griffiths, son of a first cousin of decedent, gave similar testimony although all of these witnesses had considerable knowledge with respect to the pedigree of the Mersereau family and they repeatedly discussed family relationships with other members thereof; that an examination of the records of the Surrogate's Court failed to disclose any record of a will or administration upon the estate of Joseph Russell or Abigail Russell.

The record discloses a fairly exhaustive investigation on the part of these claimants designed to unearth the fact and identity of any next of kin of decedent upon his mother's side. It embraced (1) advertisements in the New York *Times* and the *World;* (2) examination of old directories; (3) inquiries of the Census Bureau, Washington; (4) inquiries at two savings banks; (5) searches in genealogical records in the Public Library. It appears also that the special guardian made inquiries in the neighborhood where decedent's mother lived. These searches and inquiries *disclosed no trace of the existence at any time of any next of kin on decedent's mother's side.* Now comes the question; with such a record what is the weight to be given the proofs offered and what are the presumptions to be considered. In the first place, I am of the opinion that the census records produced may be relied upon without any fear of error. Considered in connection with the City Directories, the death certificate of decedent's mother and the oral testimony, they show that Abigail Russell, was a widow with one child in 1830. From all the proofs offered it is reasonably certain that this child was Marie Louise Russell, in after years decedent's mother. Moreover, we may safely conclude from the record in the City Directory that she remained a widow at least until 1850. In 1830, according to the census record, she was over forty years and under fifty years of age, so that in 1850, when her name no longer appeared in the directory, she was between sixty and seventy years of age.

In the face of the above facts and the fair deductions that may be drawn therefrom it is difficult to understand how the presumption may be asserted that there were at the time of decedent's death in 1925 next of kin on his mother's side since it has been shown: (a) that his grandmother in 1830 had one child, viz., Marie Louise Russell; (b) that said grandmother was a widow; and (c) that she remained a widow at least until she was between sixty and seventy years of age. Surely there is no presumption that she married again and bore children. Moreover if the presumption that Widow Russell left issue surviving when she died, did lie, *it would not include numbers of heirs or kin nor any particular degree of heirship or kinship.* (*Stennett* v. *Stennett,* 174 Iowa, 431; 156 N. W. 406.) Again, sub-

stantial weight must be given to the facts (1) that forty-three years have intervened since the death of decedent's mother, and in all probability his grandmother died in 1850, seventy-eight years ago; (2) that the direct testimony given by several witnesses, one of whom was disinterested, that decedent never spoke about any relatives on his mother's side; (3) that an exhaustive search failed to disclose any such next of kin; and (4) *that all unknown next of kin were duly cited* and none have appeared.   All of these facts will be accorded great weight when we contemplate that a person possessed of personal property in this State or upon whose life an estate in real property depends, who remains without the United States or absents himself in the State or elsewhere for *seven years* together is presumed to be dead in an action or proceeding concerning such property or the administration of the estate of such person, unless it is affirmatively proved that he was alive within that time (Civ. Prac. Act, § 341), and further the provision contained in section 7-a of the Domestic Relations Law (added by Laws of 1922, chap. 279) where under certain conditions a marriage may be dissolved after a husband or wife is absent for five years and diligent search fails to disclose any evidence that he or she is living.   These statutes indicate a legislative policy in dealing with absent persons who at one or a certain time were living.   They carry into effect the principle laid down in *Matter of Wagener* (143 App. Div. 286, 288): " Rights are not to be held in abeyance indefinitely on account of the absence of a person of whom no trace can be found.   He may not be dead, but he will be presumed to be dead for the purpose of fixing the rights of those known to be living." I hold that the decedent died leaving him surviving no next of kin upon his mother's side.   The objectant's exceptions to the report of the referee are sustained.   Submit decree accordingly.