# Hagedorn v. Reiser et al.

June 14, 1949.

J. A. Edge for appellant.

A. B. Thomason, B. J. Elam and Lasserre Bradley for appellees.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

From a judgment dismissing her intervening petition, the appellant, Yetta Hagedorn, appeals.

Isidore Silver was born about 1877 in the vicinity of Vienna, Austria. He came to Lexington about 1893 where he established a successful business and accumulated an estate of more than $50,000. He died intestate, a resident of Fayette county, on December 24, 1946.

On February 17, 1947, Arthur Lieber, an infant, by his guardian, Harry E. Reiser, filed a petition in the Fayette circuit court against Mary Bauer and her husband . Mary Bauer and her husband filed answer. These pleadings set out that Isadore Silver left no issue surviving him; that his wife, Hannah, had died in 1941; that his father and mother, grandparents and great-grandparents were dead; that he had no brothers; that he had one sister, Machla, who had married Abraham Blaustein; that to the sister was born one child, Rachla, or Rachael, Blaustein; that Machla and Abraham died prior to Silver; that Rachla, or Rachael, married Moses Hanf; that of this marriage were born two children, Rebecca Hanf and Mary Hanf, now Mary Bauer; that Rebecca Hanf married Joel Lieber; that there was born of that marriage one child, Arthur Lieber; that of these collaterals only Arthur and Mary survived Silver; that the decedent, Silver, at the time of his death was the owner of twelve tracts of real estate located in Lexington; that Arthur Lieber and Mary Bauer were the joint owners of the property described; that it should be sold and the proceeds divided equally between them.

Harry E. Reiser, as administrator of Isadore Sil-

ver's estate, filed an intervening petition setting out that the aggregate amount of the debts owing by decedent, Silver, is about $5,500; that the value of his personal estate is about $1,500, and asking that the twelve tracts of land described be sold; that after payment of all debts and the cost of the action the net proceeds be divided equally between Arthur Lieber and Mary Bauer.

Appellant, Yetta Hagedorn, filed an intervening petition, which she asked be made her answer, setting out that she is a sister of Hannah Silver, the wife of decedent, Isadore Silver; that Isadore Silver was not survived by any grandfather or grandmother or uncles or aunts or their descendants, or any great-grandfather or great-grandmother, or any descendants of any brother or sister or any grandfather or grandmother, or any lineal ancestor or their descendants; that she is the only living sister of Hannah Silver; that Hannah Silver had two brothers, Jake Schubinski and Caesar Schubinski; that she and the descendants of Jake and Caesar, who are now dead, are, under the provisions of KRS 391.010 and 391.030, entitled to recover the entire estate, real and personal, of Isidore Silver.

The descendants of Jake and Caesar Schubinski were made parties. The issues were made by appropriate pleadings. The cause was referred to the Master Commissioner of the Fayette Circuit Court to settle accounts of the administrator of the estate, advertise for claims, and hear proof on all questions of fact involved in the action. After hearing proof, the Commissioner, Honorable R. J. Colbert, filed his report in which he said:

"* * * At the hearing before the Commissioner it was * * * insisted by counsel for the intervening petitioner that the burden of proof was on the plaintiff and the defendants, Mary Bauer and Nathan Bauer. The intervening petitioner became a party to this action without objection, pursuant to the provisions of Sec. 29 of the Civil Code of Practice * * *.

"In the case of Brown v. Johnson, 132 Ky. 70, 116 S. W. 273, 274 * * *. The court in its decision, said: 'In the case at bar, Bush intervened, and claimed to be the owner of the property which had formerly belonged to Brown. That being so, the burden was upon him to

show ownership, for the rule is well settled that upon issues joined between the plaintiff and the claimant, the burden is upon the claimant to prove the validity of his assignment or the superiority of his title.'

"In the case of Natlee Draft Horse Co. v. Marion Cripe & Co., 142 Ky. 810, 135 S. W. 292, 293, David Orr filed his petition under Sec. 29 of the Civil Code of Practice, alleging that he was the owner of the horse levied upon at the time the action was instituted. The plaintiff asked reversal of a judgment in favor of Orr upon the ground that the court erred in placing the burden of proof upon Orr and in giving his counsel the closing argument. The court, in its opinion, said: 'The issue between Orr and the appellant was simple and distinct. He claimed to be the owner of the horse, and appellant denied that he was the owner. It seems to us that, if no proof had been introduced, Orr would have failed. Therefore the burden rested upon him to show that he was the owner of it, and this court has so held in the case of Brown, et al. v. Johnson & Johnson, 132 Ky. 70, 116 S. W. 273. Consequently the lower court did not err in that matter.'

"* * * The contention of counsel for the intervening petitioner that the burden of proof was upon the plaintiff and the defendants, Mary Bauer and Nathan Bauer, her husband, is based upon the fact that the intervening petitioner controverted the allegations of the plaintiff's petition and the allegations of the Answer and Cross Petition of the defendants. An examination of the pleadings will disclose that neither the plaintiff nor the defendants asserted any claim against the intervening petitioner, and that the intervening petitioner was not even a party to the suit at the time said pleadings were filed. If the intervening petitioner had merely traversed the pleadings filed by the plaintiff and defendants, without asserting any claim to the property involved in the suit, it would have amounted to nothing. A stranger to a suit has no right to question the rights of the parties to the suit unless she asserts that she has some right or claim to the subject matter of the action. Under the pleadings, the burden of proof was upon the intervening petitioner to establish her right to the property described in this action.

"The intervening petitioner has attempted to establish that Isadore Silver left no relative surviving him and that, therefore, all of his estate passed to the heirs at law of his deceased wife, Hannah Silver. Numerous witnesses have been introduced by the intervenor in her effort to establish this fact. Isadore Silver was closely associated with the members of his wife's family, and for almost 40 years he lived in the same home with one or more of them. The relatives of the wife, including the intervenor, and numerous other witnesses, testified in substance that they had never heard Isadore Silver mention any relative except his father and a brother. None of the witnesses for the intervenor had ever heard him speak of a sister. Notwithstanding his close association with the members of his wife's family, it appears that he was not very communicative about his relatives in the country from which he came. No witness ever heard him mention the name of his father or the name of his brother, and no witness for the intervenor ever heard him say that he did not have a sister. The proof on behalf of the intervenor is negative in character.

"The proof on behalf of the plaintiff and the defendants, Mary Bauer and Nathan Bauer, shows that about the year 1939 Isadore Silver became interested in the plaintiff, Arthur Lieber, and the defendant, Mary Bauer, who claimed to be descendants of his deceased sister, Machla Silver Blaustein. Arthur Lieber was then in Austria, and Isadore Silver sought the assistance of influential citizens and public officials of Lexington in an effort to obtain the admission of Arthur Lieber to the United States. He was successful in his efforts, as a result of which the plaintiff, Arthur Lieber, and the defendant, Mary Bauer, visited Isadore Silver in Lexington. Isadore Silver introduced them to numerous friends in Lexington as his niece and nephew. He took Arthur Lieber to a newspaper office where he was introduced to a reporter who wrote a story in which it was stated that he was the nephew of Isadore Silver and had just arrived from Austria.

"In a short time the niece and nephew returned to New York and in 1942, after the death of Isadore Silver's wife, Arthur Lieber came to Lexington to live with Isadore Silver, who had sent the boy money to pay his expenses to Lexington. Arthur Lieber lived in the

home of Isadore Silver until the death of the latter. Isadore Silver furnished the boy with food, clothing and shelter and sent him to school, and later to the University where he is still a student.

"On behalf of the intervening petitioner it is insisted that 'in order to render declarations as to parties admissible in evidence, the relationship of the declarant to the family to which the declarant refers must be proved in evidence other than the declarations themselves.' Under this rule all of the evidence introduced by the intervening petitioner would be excluded as it consists solely of declarations of the decedent, Isadore Silver. The evidence offered by the plaintiff and defendants is not limited to proof of the statements of the decedent himself. The plaintiff, Arthur Lieber, and the defendant, Mary Bauer, proved the relationship of Isadore Silver, and the defendant, Mary Bauer, proved the relationship of Isadore Silver to their ancestor, Machla Silver Blaustein, by their own testimony which consisted of proof of declarations by their parents and grandparents concerning the relationship. Mary Bauer was the first person to advise Isadore Silver that her nephew, Arthur Lieber, was anxious to leave Austria and come to America. She was not acting as the representative of any organization interested in the welfare of the Jewish people. She knew his name and address and she wrote to him as her uncle. Isadore Silver responded promptly to her letter with an offer of assistance. If he had never had a sister, Isadore Silver could not have been deceived about his alleged relationship to Arthur Lieber.

"It is established by satisfactory proof that Isadore Silver had a sister, Machla Silver, who married Abraham Blaustein; that there was born to Machla Silver Blaustein (one child Rachael) who married Moses Hanf; that there were born to Rachael Hanf and Moses Hanf, her husband, two daughters, Mary Hanf who married Nathan Bauer, and who is the defendant Mary Bauer, and Rebecca Hanf who married Joel Lieber, to whom was born the plaintiff, Arthur Lieber; that Isadore Silver had a brother who died, a bachelor and without issue, and that said Isadore Silver did not have any other brother or sister, and that he left surviving him no other descendant of any other deceased brother or sister.

"The proof shows that Joel Lieber, the father of Arthur Lieber, is dead; that Rachael Hanf and her husband, Moses Hanf, and Rebecca Hanf Lieber, the mother of Arthur Lieber, were sent to a concentration and extermination camp in Poland, and that none of them has ever been heard from since the year 1942. In the recent case of Nowak's Estate, where the next of kin of the testator were residents of Poland, reported in 183 Misc. 1077 52 N. Y. Supp. 2d pages 5, 6, the court said:

" 'The proponent further claims that there is a possibility that the brothers and sisters and their descendants are alive. I am fully aware that there is a presumption that they are living and nothing has been shown that they are dead. But the Court feels justified to some extent in considering the tragedy of the Polish people in Europe and the reasonable inference that all could have died through mass murders or through starvation. Most unusual conditions exist in the world today, which the courts must take cognizance of and apply a rule of common sense thereto.'

"The Commissioner concludes * * * that the plaintiff, Arthur Lieber, and the defendant, Mary Bauer, are the only heirs at law of Isadore Silver, deceased, and that as such they are the owners of and in possession of the real property described in this action, and that they are entitled to have said property sold under the orders of this court for the purpose of paying the debts and funeral expenses of Isadore Silver, deceased, and the costs of administering his estate, and also for the purpose of dividing the remaining proceeds of said property in equal shares between the plaintiff, Arthur Lieber, and the defendant, Mary Bauer."

The trial Judge filed an opinion in which he said: "The intervenor, Mrs. Hagedorn, lays claim to the estate of Isadore Silver under KRS 391.010(5), * * *.

"This section provides that where there is neither paternal nor maternal kindred, the whole shall go to the husband or wife of the intestate; or if the husband or wife is dead, to the kindred of the husband or wife, as if he or she had survived the intestate and died entitled to the estate. Before a husband or wife or the descendant of a husband or wife can lay claim to an estate under this section, they must show that the deceased left nei-

ther paternal or maternal kindred. One who claims under this section can not recover on the weakness of some other person's claim, but the strength of his own. Even if it were proved that the plaintiff were an imposter, this fact alone would not allow the intervenor to recover; she would still have to prove that the deceased left no paternal or maternal kindred.

"The law presumes 'every deceased person leaves heirs or next of kin capable of inheriting.' R. C. L. Vol. 9, page 18. This presumption must be overcome with proof. The Commissioner properly ruled that the burden was on the intervenor.

"The exceptions of the intervenor to plaintiff's depositions and her motion to strike should be overruled. The exceptions of the intervenor to the Master Commissioner's report should be overruled and the motion to sustain the report should be sustained. Plaintiff is entitled to a judgment in accordance with the Commissioner's report.

"Counsel will prepare an order in conformance with this opinion, and the clerk will make the opinion a part of the record."

Judgment was entered in conformity with this opinion.

Appellant assigns as errors: (1) The court erred in placing the burden of proof on appellant, the intervening petitioner; (2) the court erred in permitting proof of pedigree by hearsay evidence; (3) the court erred in not ruling on exceptions to the Commissioner's report, and exceptions to the depositions; (4) the court erred in permitting the use of untranslated, unfiled, and unauthenticated documents and letters in foreign language.

Appellant, as permitted by Civil Code of Practice, sec. 29, filed her intervening petition which was treated as her answer. As is clearly pointed out in the above report and opinion, she had the burden of proof. Wigmore on Evidence, third edition, vol. 5, sections 1480 to 1502; Jones Commentaries on Evidence, second edition, sections 1131 to 1154.

In 20 Am. Jur., pages 409 to 416, sections 468 to

476, is a discussion of family, history, relationship and pedigree. There it is said:

"468. A time-honored exception to the hearsay rule exists in respect of proof of matters of family history, relationship, and pedigree. * * *

"469. * * * Matters of pedigree within the exception to the hearsay rule include facts which go to make up pedigree, such as birth, paternity and legitimacy, age, marriage, and death. * * *

"472. Obviously, the testimony of a witness concerning his own age is based upon hearsay, but, according to the general rule, this circumstance does not render such testimony inadmissible. * * *

"473. Declarations and general repute are admissible as proof of a marriage. * * *

"474. The fact of death is a matter of pedigree within the rule which permits the admission of hearsay evidence, such as reputation, in proof of matters of pedigree. * * *"

As we have shown, the court ruled on appellant's exceptions and requested and directed that counsel prepare an order in conformance with the opinion. We find no order in the record. We presume that counsel overlooked preparing and handing in an order in accordance with the opinion and saving their exceptions.

We do find exhibits in the foreign language which are not translated, and a part of which we are unable to translate. However, the opinion of the lower court is sustained by a preponderance of the testimony, all of which, except the exhibits, is in the English language. It follows that the filing of untranslated exhibits is not substantially prejudicial to appellant.

The report of the Commissioner is a clear and fair summary of the evidence. The well considered opinion of the trial court is based upon this report. We adopt the report and the opinion as a part of our opinion here. We believe the circuit court reached the correct conclusion.

The judgment is affirmed.