208 A.2d 119.
KATHERINE R. MACMURRAY *et al. vs.* MELVILLE H. COMSTOCK, *Administrator.*

MARCH 10, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

POWERS, J. This is an appeal from a decree of the Providence probate court allowing the final account of the ad-

ministrator and ordering distribution of the remaining assets in the estate of Edward B. Maroney who died intestate March 14, 1960. It is concerned solely with that part of the order which relates to the interest of the maternal heirs. When the action was on its merits in the superior court, the parties filed an agreed statement of facts and the cause was duly certified to this court for our determination in accordance with the provisions of G. L. 1956, §9-24-25.

It appears that the intestate was predeceased by his parents and dying without issue, having no brothers nor sisters nor any of their issue surviving, distribution of his estate was controlled by G. L. 1956, §33-1-2, the provisions of which are as follows:

> "Descent of real estate to paternal or maternal kindred.—If there be no parent, nor brother, nor sister, nor their descendants, the inheritance shall go in equal moieties to the paternal and maternal kindred, each in the following course:
>
> "*First.* To the grandparents, in equal shares, if any there be.
>
> "*Second.* If there be no grandparent, then to the uncles and aunts, or their descendants by representation, or such of them as there be.
>
> "*Third.* If there be no grandparent, nor uncle, nor aunt, nor their descendants, then to the great grandparents in equal shares, if any there be.
>
> "*Fourth.* If there be no great grandparent, then to the great uncles and great aunts or their descendants by representation, or such of them as there be; and so on, in other cases, without end, passing to the nearest lineal ancestors and their descendant or such of them as there be."

Intestate's maternal grandfather John B. Moran had one brother, Brine Moran. Both predeceased intestate. Brine, however, had several descendants who survived the intestate.

John Moran, Brine's son, predeceased intestate but had three children and two grandchildren who survived inte-

state. John's children are Mary Gibney, Lillian Moran and Anna Jarret. His two grandchildren, surviving issue of a daughter Catherine, are Sister Philip Mary and Leo Mulvey.

Mary Moran Dolan, Brine's daughter, predeceased the intestate leaving two children, Katherine Dolan MacMurray and Anna V. Dolan, appellants in the instant cause.

In addition Brine Moran had a daughter Bridget who predeceased the intestate. She was the mother of two boys, Daniel and John Connors. It is agreed that these boys left home about forty years before intestate's death and both were unmarried at the time of their departure; that neither has been heard from since; that despite a due and diligent search neither the administrator nor any other party in interest has been able to ascertain any information regarding them since their departure; and that the administrator and all parties in interest have no knowledge or means of knowledge of the whereabouts or existence of any descendants of either of them.

The parties further agree that the intestate's maternal grandmother was Elizabeth King Moran; that she predeceased him; that due and diligent search of the family records has been made both by the administrator, other parties in interest and by professional genealogists but that it has failed to disclose the existence of any brothers or sisters of Elizabeth King Moran; and that neither the administrator nor any other party in interest has any knowledge or means of knowledge from which it may be ascertained that any such ever existed.

On a showing of the foregoing genealogy the probate court ordered distribution to the maternal heirs as follows:

1/4 to the heirs of Elizabeth King (Moran),
1/24 to each of the Connors boys,
1/24 each to Katherine Dolan MacMurray and Anna V. Dolan,

> 1/48 each to Mary Gibney, Lillian Moran and Anna Jarret,
>
> 1/96 each to Sister Philip Mary and Leo Mulvey.

The appeal is predicated on that part of the court order allocating 1/4 of the estate to the heirs of Elizabeth King (Moran), there being no evidence that any such ever existed, and 1/24 to each of the Connors brothers of whom nothing had been heard for over forty years. In connection with the order of distribution to the heirs of Elizabeth King Moran, appellants argue that from a reading of §33-1-2 it is clear that where only one of the grandparents is known to have had a brother or brothers, or a sister or sisters whose descendants survived the intestate, the legislature intended such descendants to take the entire moiety rather than to hold in abeyance forever a portion thereof for no other reason than the mere possibility that the other grandparent may have had brothers and sisters even though there is no apparent likelihood that such possibility can ever be proved.

In support of their contention, they cite *Succession of White*, La., 85 So. 2d 528, *Newport National Bank* v. *Fick*, Ky., 294 S.W.2d 521, and *In re Meserole's Estate*, 230 N. Y. Supp. 161. We have examined these together with cases cited therein with approval, and find that they are authority for the general principle which appellants contend motivated the legislature of this state.

On the other hand respondent argues that the applicable rule as laid down in the decision of other states is more persuasive, citing *In re Estate of Evans*, 228 Iowa 908, *Sorensen* v. *Sorensen*, 68 Neb. 483, *Holton* v. *Hassam*, 94 Vt. 324, *Estate of Garthwaite*, 131 Cal. App. 321, *Novak* v. *Trustees of Orphans' Home*, 123 Md. 161, and *Hagedorn* v. *Reiser*, 310 Ky. 657.

In each of these cases the court applied the well-known principles that remote heirs can prevail only on the strength of their own position, taking nothing by reason of the un-

certainty of other possible claimants who, if they exist, would have a superior claim, and further that the law presumes an intestate is survived by heirs or kindred capable of inheriting. Applying these principles to the instant cause respondent argues that the living descendants of the intestate's maternal grandfather are not entitled to take the 1/4 of the estate ordered distributed to the heirs of the maternal grandmother.

A careful reading of the cases on which respondent relies, however, discloses that the circumstances in each and the issue thereby posited present more cogent reasons for the application of such principles than is present in the instant case.

For example, in *Hagedorn* v. *Reiser, Sorensen* v. *Sorensen,* and *In re Estate of Evans, supra,* the ultimate issue arose out of the conflicting claims of contesting claimants and became a question of the burden of proof. *Holton* v. *Hassam, supra,* involved a criminal complaint for trespass and the defense was based on a claim of title. There also the controlling issue was determined by where the burden of proof rested.

Again the case of *Estate of Garthwaite, supra,* is yet another instance of where the presumption was invoked for a reason far different from the issue in the case at bar. There the court, acting pursuant to its obligation to give meaning to every part of a legislative enactment whenever possible, applied the presumption to avoid reaching a result which would have rendered part of a statutory provision meaningless.

In *Novak* v. *Trustees of Orphans' Home, supra,* the principle that an intestate is presumed to have left heirs or kindred capable of inheriting and that such presumption must be rebutted by proof was applied to prevent real estate which had been held long enough to establish title by adverse possession from escheating to the state. Forty-one

years prior to the litigation the respondent trustees had taken possession of certain premises devised to them by the provision of a will. Their possession was by claim of right and had remained peaceful, uninterrupted and adverse within the meaning of an appropriate statute. However, the devise was found to be void and since the testator was survived by no known heirs or next of kin, it was claimed that the property had escheated to the state against which title by adverse possession could not be asserted. The court applied the presumption to avoid such claim.

In the case at bar the reverse of that situation is presented. With the enactment of P. L. 1961, chap. 195, sec. 6 (G. L. 1956, §33-21-12, as amended), there was established an escheat law for the state of Rhode Island and the previous long-standing provision that property would be held forever for unknown heirs was repealed. If the position of respondent in the case at bar were to be adopted, the 1/4 ordered distributed to the heirs of intestate's maternal grandmother would, presumably, escheat to the state.

In our judgment, however, the general assembly did not intend a result which would give to the state by escheat property that would otherwise be distributed to known next of kin. Acknowledging the validity of the principles upon which respondent relies, we are of the opinion that in the circumstances of the instant case they are not controlling.

As previously noted, the Kentucky court of appeals applied the presumption in *Hagedorn* v. *Reiser, supra*. However, some years later in *Newport National Bank* v. *Fick, supra,* referring to the validity of the presumption it stated at page 522, "but the presumption may be rebutted either by lapse of time, accompanied by non-appearance of heirs, or by proof of the nonexistence of heirs." The court then proceeded to hold that in the case before it the presumption had been rebutted by the lapse of time and the nonappearance of heirs despite a diligent effort to locate any.

The circumstances and applicable statutes in the case at bar are, we believe, so closely similar to those in *Newport National Bank* v. *Fick* as to come within the conclusion reached by that court. The agreed statement of facts on which we reach our conclusion established that the intestate's maternal grandfather, John B. Moran, died in 1877 some eighty-three years prior to the death of the intestate. Although the exact date of death of the maternal grandmother, Elizabeth King Moran, is not known, it is agreed that she predeceased her intestate grandson. It is further agreed that due and diligent search was made by the administrator, other parties in interest and by professional genealogists without result. On these facts and the applicable statutes of descent and distribution vis-a-vis escheat, together with the public policy which we believe the legislature has expressly and impliedly declared, we hold that the probate court erred in ordering the 1/4 distribution to the heirs of Elizabeth King Moran. Rather it is our judgment this moiety should have been distributed to the known next of kin of the maternal grandfather.

It is also our judgment that the probate court erred in ordering a distribution of 1/24 of the estate to each of the missing Connors boys. It is established that nothing had been heard of them for more than forty years at the time the distribution was ordered.

The appellants urge that this phase of their appeal is supported by *In re Truman*, 27 R. I. 209. There confirming the rights of the claimants who relied on the silent absence of a brother for some thirty years, this court held that the fact that a person has been absent from his home and unheard of by his family for a period of seven years raises the presumption of his death which is strengthened with the passing of time.

No legislative declaration of public policy to the contrary was enacted by the general assembly following the afore-

said judicial declaration in 1905 and thirty-three years later in *Bonanno* v. *Prudential Insurance Co.*, 62 R. I. 78, this court again applied the rule. See also *Frechette* v. *Travelers Insurance Co.*, 70 R. I. 347.

Nevertheless respondent urges that, if valid, the presumption should not be extended to include death without issue of persons of more remote kinship. He bases this argument on the fact that the successful claimants in the *Truman* case were brother and sister to the missing heir whereas here appellants are cousins of the Connors brothers and all are second cousins of the decedent.

This argument, however, misconceives the legal effect of applying the seven-year presumption in the case of Daniel and John Connors. Applying it, as we do, each of the Connors boys' interest becomes subject to the same ruling as was applicable in the order of distribution to the "Heirs of Elizabeth King [Moran]." The order of distribution would apply not to them but to their heirs, and on the agreed statement of facts as to their nonappearance despite diligent efforts to establish the existence of such, it is our judgment that the presumption against intestacy in the cases of Daniel and John Connors has been rebutted.

The appeal from the decree of the probate court is sustained, and the papers in the action with our decision certified thereon are ordered sent back to the superior court with direction to enter final judgment upon the decision.

*Sherwood and Clifford, Raymond E. Jordan, A. Lauriston Parks,* for appellants.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan,* for appellee.