Merrimack County Probate Court
No. 90-127

*In re* ESTATE OF EMILY J. BRUNEL

December 6, 1991

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*Simone D. Masse* on the brief and orally), for plaintiffs Margaret LaCerais and Winifred Vania.

*John P. Arnold*, attorney general (*Monica Ciolfi*, assistant attorney general, on the brief and orally), for the State.

*Branch & Greenhalge P.A.*, of Concord, for plaintiffs Lois Stecker & a., adopted the brief of plaintiffs LaCerais and Vania.

*G. Wells Anderson*, of Concord, as guardian ad litem for unknown heirs, adopted the plaintiffs' brief.

*Sulloway Hollis & Soden*, of Concord, for the administrator of the estate, First Capital Bank, filed no brief.

HORTON, J.   This case comes before us in an interlocutory transfer without ruling from the Merrimack County Probate Court (*Cushing*, J.), pursuant to RSA 547:30, transferring the following question:

> "In the absence of express provision for distribution to second cousins under RSA 561:1, are second cousins of an intestate decedent entitled to legal recognition as 'heirs' of the decedent, so as to defeat the terms of RSA 561:8 providing for escheat to the State '[i]f there be no heir'?"

Implicit in this question is an additional question: if escheat is defeated, can the second cousins, assuming they are the closest rela-

tives of the deceased, take under the descent and distribution law of New Hampshire? We answer "yes" to both questions.

The facts of this case are undisputed. Emily J. Brunel, late of Concord, died intestate in 1988, leaving no surviving spouse, issue, parents, issue of parents, grandparents, or issue of grandparents. Her only known surviving relatives are the plaintiffs, a group of second cousins, all related to her through a common great-grandfather.

The transferred question based on these facts arises from the coordination of two statutes which have lived together in harmony for a very long time, albeit the form of one of them has changed. The first is the escheat statute, now codified at RSA 561:8. In material part it reads as follows:

> "If there be no heir, legatee, or devisee of an estate, the same shall accrue to the widow or widower, and if there be no widow or widower, the same shall accrue to the state. . . ."

*Id.* We note that the term "heir" has appeared in this statute since 1822, *see* Laws 1822, 28:2. The second relevant statute is our intestacy statute, now codified at RSA 561:1, II(d), enacted in its present form in 1973, which amended the 1971 combined (realty and personalty) intestacy provision. The 1971 combined intestacy statute provided the following order of distribution:

> "I. If the deceased is survived by a spouse, the remaining two-thirds interest to the children of the deceased and the issue of such of them as are dead.
>
> II. If there is no spouse surviving, the entire interest to the children of the deceased and the issue of such of them as are dead.
>
> III. If there be no children, or issue of any deceased children, to the father and mother in equal shares if both are living, and to the father or mother if one of them is deceased.
>
> IV. If there are no children, or issue of any deceased children, or father or mother, in equal shares to the brothers and sisters or their representatives.
>
> V. If there are no children, or issue of any deceased children, father, mother, brother, sisters or their representatives, to the *next of kin* in equal shares."

Laws 1971, 179:26 (emphasis added).

The current intestacy statute, RSA 561:1, II(d), was taken from the Uniform Probate Code (UPC) and provides that:

"If there is no surviving issue, parent or issue of a parent but the decedent is survived by one or more grandparents or issue of grandparents, half of the estate passes to the paternal grandparents if both survive, or to the surviving paternal grandparent, or to the issue of the paternal grandparents if both are deceased, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take by representation; and the other half passes to the maternal relatives in the same manner; but if there be no surviving grandparent or issue of grandparent on either the paternal or the maternal side, the entire estate passes to the relatives on the other side in the same manner as the half."

This statute did away with the "next of kin" language and substituted a schedule of priorities for intestate distribution. Provision was made for distribution to grandparents and their issue, but beyond that the statute is silent. Unlike the UPC, there are no escheat provisions, other than the one which was already present in the form of RSA 561:8, to expressly limit distribution beyond the scheduled relatives in RSA 561:1, II(d).

Under the UPC, second cousins cannot participate in intestate distribution. UPC art. II, pt. 1 comment, 8 U.L.A. 56; UPC § 2-103 comment, 8 U.L.A. 61. According to UPC § 2-105, an escheat will occur "[i]f there is no taker under the provisions of [UPC Article II]." *Id.*, 8 U.L.A. 65. The New Hampshire escheat statute, RSA 561:8, does not reference the other sections of RSA chapter 561, but stands in isolation, requiring that "there be no heir" before such an escheat may occur.

Thus, the question arises whether the "heirs," whose absence is essential if the State is to take by escheat under RSA 561:8, include, as the State argues, only the relatives indicated in RSA 561:1, or whether that term includes, as the plaintiffs argue, unscheduled relatives such as the descendants of great-grandparents. There is no doubt that the legislature may act to limit and order those eligible to take by intestate succession. *See In re Estate of McQuesten,* 133 N.H. 420, 424, 578 A.2d 335, 338 (1990). It is the task of this court to determine whether our legislature has so acted, and how far any such act has gone to order and limit succession and to affect the statutory provision for escheat.

The State contends that RSA 561:1, because it does not mention great-grandparents or their issue as participants in intestate distri-

bution, should be construed in accordance with the common law maxim of statutory construction that the inclusion of one thing in a statute implies the exclusion of another. *In re Gamble*, 118 N.H. 771, 777, 394 A.2d 308, 311 (1978) (citing *Vaillancourt v. Concord Gen. Mut. Ins. Co.*, 117 N.H. 48, 369 A.2d 208 (1977)). Thus, the State's argument runs, the relatives who are granted certain distribution priorities by RSA 561:1 must constitute the complete legislative definition of "heirs" for both intestate distribution and escheat purposes.

Our analysis in the present case, however, requires primary interpretation of RSA 561:8 and its use of the term "heirs," before reflection on the interpretation of RSA 561:1, II(d). "Heirs" is not a defined term in RSA chapter 561, nor does RSA 561:1 list the "heirs" of an intestate estate. RSA 561:1 does not exclude certain persons from the status of "heirs," or even use the term "heirs" in its text. Further, RSA 561:8 is neither expressly nor impliedly linked to RSA 561:1. Thus, the State's argument presupposes a comprehensiveness, and a pertinence, to the issue of escheat which RSA 561:1 does not possess. Although RSA 561:1 furnishes a series of preferences in intestate distribution among the decedent's spouse, descendants, ascendents, and collaterals to the level of grandparents and their issue, thereby changing former statutory and common law precepts, the escheat worked by RSA 561:8 is not dependent upon RSA 561:1 and does not become effective until there is no "heir." Clearly, an ascendent above the level of grandparent, such as a great-grandparent, or a collateral descending from such an ascendent, such as a second cousin, regardless of the degree of relationship, has no rights in intestate distribution if anyone in the preferred classes of relatives listed in RSA 561:1 survives the decedent. Nonetheless, as RSA 561:8 does not limit potential heirs to the relatives listed in RSA 561:1, an escheat may not occur if there are ascertainable relatives, even though they may be related to the decedent in a lineage other than one of those specified in RSA 561:1. Therefore, the plaintiff second cousins in this case are "heirs," and their existence will defeat escheat to the State.

The State argues that interpreting the provisions of RSA 561:8 in such a manner would render the 1973 amendment to RSA 561:1, II(d) "idle and meaningless." *Kalloch v. Board of Trustees*, 116 N.H. 443, 445, 362 A.2d 201, 203 (1976). We disagree. This amendment substantially refined our intestate law by further exemplifying the progression of heirs found in the previous version of the statute, and by defining a new priority of possible takers under the intestacy statute.

The State argues that the legislature's enactment of a statute modeled on UPC § 2-103 requires the conclusion that the legislature adopted the UPC's policy of cutting off potential heirs tracing through relatives more distant than the decedent's grandparents. In *In re Estate of Martineau*, 126 N.H. 250, 253, 490 A.2d 779, 781 (1985), we considered the election of the legislature not to enact a different provision of the Uniform Probate Code, UPC § 2-106. There, we held that the policies of the UPC would be given effect despite the failure to enact UPC § 2-106, because our law was already consistent with the policy embodied in § 2-106 and, hence, that section's passage was "unnecessary." *Id.* We did not make this determination on the ground that the passage of a single provision of the UPC automatically required all Uniform Probate Code policies to govern the interpretation of the remainder of RSA chapter 561.

In the case before us, our long-standing escheat policy is inconsistent with the scheme of the UPC because, unlike the UPC, it has never been employed to prevent more distant, ascertainable, relatives from taking by intestacy. *See* LOUIS G. HOYT, THE PRACTICE IN PROCEEDINGS IN THE PROBATE COURTS OF NEW HAMPSHIRE 252–54 (1901) (hereinafter HOYT, PROBATE). The legislature elected not to introduce the entire UPC scheme into our law. It left the State's grasp powerless where "heirs" of an estate exist. Passage of the UPC escheat provision could hardly be termed "unnecessary" if the UPC scheme was to be completed and the traditional understanding of the term "heirs" significantly limited. Therefore, rather than adopting the State's negative inference, we conclude that the amendment to our intestate distribution law can be harmoniously interpreted as preserving our long-standing statutory provision that an estate will escheat only when there are no "heirs," a designation which includes second cousins.

Finally, the State contends that allowing intestate distribution to extend to persons beyond those relatives listed in RSA 561:1 would mean that estates could never escheat as, technically, a decedent always has some surviving relative, albeit one who may trace from a remote common ancestor and who may never have known of the existence of the decedent. N.H. Judicial Council, THIRTEENTH BIENNIAL REPORT 33 (1970). This technical fact supports only a technical argument, one that does not appear to have been borne out in practical experience. The State's argument that an infinite progression of heirs in intestate distribution would be "too uncertain . . . since all mankind are related," *Smith's Reports* 465 (excerpting Smith, J., *An Essay on the Law of Descent and of Last Wills and Testaments* (c.

1797–1805)), is not a novel insight. Even at an early date, experience had proved the State's fear unfounded. Chief Justice Jeremiah Smith, one of New Hampshire's first legal scholars, noted nearly two centuries ago that:

> "[T]he person claiming to be heir must prove himself. It has seldom happened in England that kinsmen beyond the tenth, or even the seventh, degree have succeeded to the estate of a person dying intestate. . . .
>
> . . . In this State it is apprehended there are many who could not, and some who would not choose to, trace out their ancestors to the seventh degree."

*Id.* at 465–66.

█ Until 1973, the language of RSA 561:1 referred to "next of kin" as the final class of intestate distributees. The fact that this class of distributees potentially extended well beyond grandparents and their issue and included second cousins as intestate distributees, *see* LOUIS G. HOYT, THE LAW OF ADMINISTRATION IN NEW HAMPSHIRE 57, 61–62 (1916) (hereinafter HOYT, ADMINISTRATION) (employing table of descents and mentioning second cousins as collaterals qualified to take under intestacy), apparently did not preclude escheat where the lack of a proper record prevented determination of the next of kin. Our escheat law was not intended to give the State property that would otherwise be distributed to known next of kin. *See* HOYT, PROBATE, *supra* at 252–56; *accord MacMurray v. Comstock*, 99 R.I. 368, 374, 208 A.2d 119, 122–23 (1965). Our escheat law allows the State to take only when there has been a failure to ascertain any "heir." In the case at bar, there is a sufficient record to determine the names of the second cousins of the decedent. Indeed, several of them have been located already. The search for the remainder has been suspended pending our answer to the question transferred, but the State's apprehension of a potentially endless hunt for heirs appears unfounded.

█ We are left with the implied question. If the estate does not escheat, where does it go? We have acknowledged that RSA 561:1 does not expressly provide for distribution to second cousins. Neither does it expressly prohibit distribution to second cousins. In light of the legislature's reluctance to change our escheat policy, we hold that RSA 561:1 controls the eligibility and priority for distribution as far as it goes, and that beyond that point, we look to the common law. *See, e.g., Meehan v. Bachelder*, 73 N.H. 113, 114, 59 A.

620, 620 (1904) (statute authorizing the issuance of writs *quo warranto* leaves to the common law the procedures for such issuance).

The State has acknowledged that we have a common law of intestate descent and distribution. Although subject to statutory amendment and adjustment, it remains, until changed, a residual basis for the distribution of intestate estates. *See Smith's Reports* 458–59. The common law of intestate descent and distribution in this State takes its form from the English Statute of Distributions. *Id.; see also State v. Mint &c. Machine,* 85 N.H. 22, 24, 154 A. 224, 226 (1931) (English statute regulating gaming became a part of our common law as so far adapted to our conditions); *Robinson v. Holt,* 39 N.H. 557, 561 (1859) (same concerning English fraudulent conveyance statute); *State v. Moore,* 14 N.H. 451, 454–55 (1843) (same concerning English domiciliary statute). Under this ancient scheme, we have a table of descent, establishing degrees of relationship, acknowledging all collaterals, and preferring the nearer to the more remote. *Smith's Reports* 458–59; *see also* HOYT, ADMINISTRATION, *supra* at 57–64 (reprinting the table of descent with instructions for its use).

■ We hold that the second cousins of the late Emily J. Brunel are her "heirs" within the meaning of RSA 561:8, and that their existence defeats the State's escheat claim. We further hold that second cousins are included in our scheme of intestate distribution and that the plaintiffs here may participate in the distribution of the Brunel estate in preference to the State.

*Remanded.*

All concurred.